FAULKENSTEIN TOWNSHIP, OF STANTON COUNTY, KANSAS, v. THOMAS G. FITCH, FREDERICK L. FITCH, AND SHERMAN K. FITCH, *Partners as Fitch Bros. No. 3.*
No. 144.

1. FUNDING BONDS—*Compromise with Township.* Where township warrants are held by a person and he makes an offer to compromise the same for funding bonds, and the bonds are issued under sections 1, 2 and 3 of chapter 50 of the Laws of 1879 (Gen. Stat. 1889, ¶¶ 464, 465, 466), and the warrants are destroyed and the bonds are delivered to the person holding the warrants, the transaction is completed so far as the authority to issue the bonds is concerned. Each condition precedent has been performed and has spent its force. If the township afterward procures the bonds and destroys them, with the assent of the holder of the original

warrants, before the rights of any other person attaches thereto, the transaction is then entirely completed, and all persons are in the same condition as they were before the compromise was made.

2. ——— *Void for Want of Authority.* If the township officers are afterward induced to execute purported funding bonds and exchange them for an agreement to build a sugar-mill, such bonds are void for want of authority by said township officers to issue them.

3. ——— *Cases Distinguished.* Bonds issued by virtue of and in accordance with the provisions of sections 1, 2 and 3 of chapter 50 of the Laws of 1879 (Gen. Stat. 1889, ¶¶ 464, 465, 466) do not come within the doctrine laid down in *Knox Co. v. Aspinwall*, 62 U. S. 544; *Coloma v. Eaves*, 92 id. 484, or *The State, ex rel., v. Comm'rs of Kiowa Co.*, 39 Kan. 657, for the reason that the township officers whose duty it is to sign the bonds are not by said enactment made the tribunal to decide whether the precedent conditions have been complied with.

4. ——— *Canvass of Vote.* In an election to authorize the township officers to compromise an outstanding indebtedness, the board of county commissioners is the tribunal selected by the legislature to canvass the votes cast at such election, and to determine the result, and it is then the duty of the county clerk to notify the township officers of their determination.

5. ——— *Purchaser—Notice.* A purchaser of township bonds issued under the provisions of sections 1, 2 and 3 of chapter 50 of the Laws of 1879 (Gen. Stat. 1889, ¶¶ 464, 465, 466) is bound to take notice of the township records.

6. ——— *Purchaser—Legality of Election.* Section 3, *supra*, contains a sufficient notice to an intending purchaser of the bonds that an election must be held to authorize the action of the township officers in issuing said bonds, and such purchaser is bound to examine into its legality.

7. ——— *Case Followed.* The opinion written by Mr. Justice BREWER, in *Lewis v. Comm'rs of Bourbon Co.*, 12 Kan. 186, quoted, referred to, and followed.

8. ——— *Repudiation and Ratification.* Where the township officers who issue illegal bonds also make a tax levy for the purpose of paying the interest thereon, and where the voters and taxpayers at the first opportunity repudiate the officers and repudiate the bonds, and refuse to pay the interest to the bondholder or to levy any more taxes to pay such interest, *held*, that they have not ratified the issue of bonds.

MEMORANDUM.—Error from Stanton district court; WM. EASTON HUTCHINSON, judge.   Action brought by Thomas G. Fitch, Frederick L. Fitch, and Sherman K. Fitch, partners as Fitch Bros. No. 3, against Faulkenstein Township, Stanton county, Kansas, to recover on certain interest coupons on bonds purporting to have been issued by said township.   Judgment for plaintiffs, and defendant brings the case here.   Reversed.   The opinion herein was filed January 17, 1896.

The statement of the case, as made by DENNISON, J., is as follows :

This is an action brought in the district court of Stanton county, Kansas, by Thomas G. Fitch, Frederick L. Fitch, and Sherman K. Fitch, partners as Fitch Bros. No. 3, against Faulkenstein township, of Stanton county, Kansas, to recover the amount due upon several matured interest coupons which were attached to three refunding bonds purported to have been issued by said township.   The following is a copy of one of the bonds to which the coupons were attached, and also a copy of one of the coupons sued on :

"No. 1.   United States of America.   $1,000.   Faulkenstein Township Funding Bond.   Faulkenstein Township, County of Stanton, State of Kansas.   Know all men by these presents, that the township of Faulkenstein, in the county of Stanton, state of Kansas, acknowledges itself indebted to the bearer in the sum of one thousand dollars, lawful money of the United States of America, to be paid in thirty years from the first day of July, A. D. 1889, with interest thereon at the rate of six per cent. per annum, payable semiannually on the first days of January and July in each year, upon the presentations of the coupons hereto attached as

they become due. Both principal and interest payable at the fiscal agency of the state of Kansas, in the city of New York. This bond is one of a series of fifteen bonds of one thousand dollars each, and issued by virtue of and in accordance with the provisions of sections one, two and three of chapter fifty of the laws of 1879, being an act of the legislature of the state of Kansas entitled 'An act to enable counties, municipal corporations, the boards of education of any city, and school districts to refund their indebtedness,' which said act took effect March 10, 1879. And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuing of said bonds have been done, happened and performed in regular and due form as required by law. In testimony whereof, this bond has been issued and signed by the township trustee, attested and registered by the township clerk, and countersigned by the township treasurer of said township of Faulkenstein, in the county of Stanton and state of Kansas, this 7th day of February, A. D. 1890.

(Signed) J. E. TUCKER, *Township Trustee.*
"Attested and registered : W. B. WARD, *Township Clerk.*
" Countersigned : L. C. MANSON, *Township Treasurer.*"

### COUPON.

"No. ——. On the 1st day of July, 18——. $30. The township of Faulkenstein, in the county of Stanton and state of Kansas, will pay to the bearer, at the fiscal agency of the state of Kansas, in the city of New York, thirty dollars, for six months' interest on refunding bond number ——.

J. E. TUCKER, *Township Trustee.*
"Attest : W. B. WARD, *Township Clerk.*
"L. C. MANSON, *Township Treasurer.*"

Attached thereto were the following certificates :

" State of Kansas, county of Stanton, ss. I, Wallace Gibbs, clerk of the county of Stanton, in the state of Kansas, do hereby certify, that the within bond No. 1, of the township of Faulkenstein, county of Stanton, state of Kansas, has been duly registered in

my office according to law. Done at Johnson City, Kas., this 8th day of February, 1890.

[SEAL.]      WALLACE GIBBS, *County Clerk.*"

"State of Kansas, ss. I, Chas. M. Hovey, auditor of the state of Kansas, do hereby certify, that this bond has been regularly and legally issued, that the signatures thereto are genuine, and that the same has been duly registered in my office according to law. In witness whereof, I have hereunto set my hand and affixed my seal of office, at the city of Topeka, this 22d day of January, 1891.      CHAS. M. HOVEY;

[SEAL.]                  *Auditor of State of Kansas.*"

The case was tried by the court without a jury and separate findings of fact and conclusions of law were made. Judgment was rendered for the plaintiffs below, and the defendant below brings the case to this court for review.

The evidence in the record and the findings of fact of the court fairly establish the following state of facts:

Some of the people of the township conceived the idea of voting aid to the American Sugar Company to assist in the construction of a sugar-mill in the township. Being informed that the law authorizing the issue of bonds to a private enterprise was unconstitutional, the township officers sought to bind the township by issuing the warrants of the township to one John Rambo, a citizen of said township. Sixteen warrants of $1,000 each were issued and delivered to said Rambo. Afterward said Rambo made a proposition to said township that he would compromise his 16 warrants for 16 bonds of $1,000 each, due in 30 years and drawing 6 per cent. interest, payable semi-annually. An election was called and a majority of the votes were cast in favor of issuing such refunding bonds. The township officers were proceeding to exe-

cute the bonds, but before the final completion thereof the people repented of their action, and the warrants were destroyed about the 4th day of December, 1889, and the uncompleted bonds were destroyed on the 21st day of December, 1889, because, as testified to by John Rambo himself, ''It was generally rumored that the sugar company to whom they were intended to go for the erection of a sugar plant was a fraud, and became disorganized.'' About the 7th day of February, 1890, the township trustee and treasurer and G. S. Stein and John H. Pitzer met at the house of the clerk of said township and proceeded to write up the bonds mentioned in this action and 13 others, being in all 16 bonds of $1,000 each, and the coupons thereto attached. Said bonds were numbered from 1 to 16, inclusive, and were signed and executed by said township officers as and for the act of said township. The bonds were afterward taken to the office of the county clerk and registered, as shown by the certificate above set forth. They were also registered in the office of the auditor of state, and were accompanied by the following certificates :

''State of Kansas, Stanton county, ss. Township of Faulkenstein. I, W. B. Ward, township clerk of the township and state aforesaid, do hereby certify that the total amount of taxable property in Faulkenstein township for the year 1889 amounted to $128,-942 ; that the bonded indebtedness of·said township this date is $16,000 ; the total floating indebtedness is nothing. I further certify, that the bonds of said township, from the No. 1 to No. 16, inclusive, issued on the 7th day of February, 1890, of the denomination of $1,000 each, signed by J. E. Tucker, as township trustee, attested by W. B. Ward, as township clerk, and countersigned by L. C. Manson, as township treasurer, were issued in strict compliance with law, and that the following signatures of J. E. Tucker, W. B.

Ward and L. C. Manson were executed in my presence by the same persons who signed the above enumerated bonds. In testimony whereof, I have hereunto set my hand and official seal, this 8th day of February, 1890.

[SEAL.]          W. B. WARD, *Township Clerk.*"

"Statement of bonds of Stanton county, Faulkenstein township, canceled by the issuance of refunding bonds:

| No. | Date. | To whom issued. | Amt. of. | When due. | When canceled. |
|---|---|---|---|---|---|
| 23 | Nov. 21, 1889 | John Rambo... | $1,000 | Nov. 21 | Dec. 4, 1889. |
| 24 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 25 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 26 | Nov: 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 27 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 28 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 29 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 30 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 31 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 32 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 33 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 34 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 35 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 36 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 37 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |
| 38 | Nov. 21, 1889 | John Rambo... | 1,000 | Nov. 21 | Dec. 4, 1889. |

"State of Kansas, county of Stanton, ss. I, J. E. Tucker, trustee of Faulkenstein township, do hereby certify that the above and foregoing is a true statement of the warrants of said township that have been refunded and canceled by the issuance of new bonds. Witness my hand, this 8th day of February, 1890.

J. E. TUCKER, *Trustee.*"

"State of Kansas, county of Stanton, ss. I, Wallace Gibbs, county clerk in and for the county and state aforesaid, do hereby certify that the within-named J. E. Tucker, trustee, W. B. Ward, township clerk, and L. C. Manson, treasurer, are the legally constituted officers of Faulkenstein township, Stanton county, Kansas, and full faith and credit may be attached to their official acts, and that their signatures on first page of this instrument are official and genuine. Wit-

ness my hand and official seal, this 8th day of February, 1890.                    WALLACE GIBBS,
[Seal of Stanton county.]                    *County Clerk.*"

The taxpayers of the township were endeavoring to prevent the recording and delivery of the bonds, and, through the county attorney of Stanton county, had notified the state auditor not to register them.  Application was made to have them registered in 1890 but the auditor refused to register them.  After the inauguration of the new auditor, in 1891, and on January 22, these three bonds were again presented and, during the absence of Mr. Hovey, one of the employees in the office registered them.  Soon after the auditor made a notation on his records not to register any more.  The bonds were turned over to Stein on or about the 12th day of February, 1890, and he gave his receipt for the same to the township trustee and shortly afterward delivered to said trustee a receipt, agreement and bond of the American Sugar Company and took up his receipt.  The taxpayers were attempting to prevent the execution and delivery of the bonds and were afterward endeavoring to recover them.  In August, 1890, the township trustee and clerk were attempting to recover the bonds and on pages 76, 77 and 78 of the township records the following contracts and stipulations are entered of record :

"COPY OF CONTRACT.

"State of Kansas, Seward county, ss.   Arkalon, Kan., August 6, 1890.   Know all men by these presents, that we, John E. Tucker, trustee of Faulkenstein township, Stanton county, Kansas, and C. A. Soper, township clerk of said township, county, and state, of the first part, and John H. Pitzer, party of the second part, have this day entered into the following contract : That for and in consideration of legal service rendered, to be rendered for, to and upon the delivery of this

Statement of the Case.

contract, we then, aforesaid officers of said township, county, and state, do hereby sell and transfer and assign unto the said John H. Pitzer three certain refunding bonds and public securities of and against this said Faulkenstein township, numbered one (1), two (2), and three (3), of the denomination of one thousand dollars each, and bearing interest at the rate of 6 per cent. per annum, and said bonds shall be his compensation in full for said legal services.

J. E. Tucker, *Township Trustee.*
C. A. Soper, *Township Clerk.*"

"State of Kansas, Seward county, ss. Know all men by these presents, that John E. Tucker, trustee of Faulkenstein township, Stanton county, Kansas, and C. A. Soper, clerk of township, parties of the first part, for and in consideration of John H. Pitzer securing and delivering unto them their certain refunding bonds as public securities of the denomination of one thousand dollars each, and numbered 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16, against said Faulkenstein township, hereby assign and deliver and convey to said John H. Pitzer, number 1, 2, 3, 4, 5, 6, of said bonds as public securities.

John E. Tucker, *Township Trustee.*
C. A. Soper, *Township Clerk.*
"Dated at Arkalon, Kan., this 6th day of August, 1890."

"STIPULATION.

"Know all men by these presents, that it is hereby agreed that W. H. Green shall hold in escrow two certain contracts entered into this day between John E. Tucker, trustee, and C. A. Soper, clerk, and John H. Pitzer; said W. H. Green to deliver said contracts to John H. Pitzer upon his receipt of the receipt from said C. A. Soper, clerk, that he has received certain refunding bonds against Faulkenstein township; said bonds numbered 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16; said negotiations to be closed up within 30 days from this date, or said contracts held by said Green shall be returned to said township officers, unless for reason an extension of time is granted by said town-

ship officers.    Dated at Arkalon, Kan., this 6th day of August, 1890.        JOHN E. TUCKER, *Trustee.*
C. A. SOPER, *Clerk.*"

They failed to obtain the bonds under these contracts, and afterward employed one R. B. Soper to procure the bonds.    He was partially successful and procured a portion of them, and they were disposed of by the township in the following manner, as is shown by the township record, at page 75 :

"Faulkenstein township, Stanton county, Kansas, April 30, 1891.    Township meeting, special session, pursuant to call of J. E. Tucker, trustee of said township, for the purpose of receiving certain outstanding refunding bonds against said township, full board being present.    R. B. Soper appeared before said board and delivered to said J. E. Tucker ten refunding bonds against said township, of the denomination of one thousand dollars ( $1,000 ) each, numbered 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16.    Upon motion of L. C. Manson, the said J. E. Tucker, in the presence of the township board, D. P. Morrison, and R. B. Soper, proceeded to destroy, and did destroy the above-described bonds by tearing and burning the same.    Being no further business, the board adjourned.

C. A. SOPER, *Clerk.*
J. E. TUCKER, *Trustee.*"

For these services Mr. Soper was paid $100 by the township.    In the month of September, 1891, the defendants in error obtained the bonds in controversy in a trade with G. S. Stein, and were *bona fide* holders thereof.

It is useless to attempt to discuss separately the 18 assignments of error filed in this case, and the 47 subdivisions thereof contained in the brief.    Many of them are merely technical.    We will at once proceed to consider the merits of the case, and by so doing will reach the same conclusion that we must if we

were to examine separately the numerous questions raised by plaintiff in error in its brief.

*A. B. Reeves*, and *Milton Brown*, for plaintiff in error.

*Samuel Lawrence*, and *C. W. Knapp*, for defendants in error.

The opinion of the court was delivered by

DENNISON, J. : In the determination of this case there seem to us to be two questions that present themselves for our consideration : (1) Do the records disclose such a state of facts as entitle a *bona fide* holder of the bonds to recover thereon? (2) Is the township estopped from defending against the bonds by reason of the recitals contained in the bonds?

The defendants in error introduced in evidence the contents of pages 81, 82 and 83 of the record, which were copied from a typewritten paper brought to the meeting held at the clerk's house on the 7th day of February, 1890, by Pitzer and Stein, and which purport to be signed by the township clerk. The contents of said pages 81, 82 and 83 are as follows :

"That afterward, on the 3d day of December, 1889, an election was held in Faulkenstein township, in pursuance with the above notice, and such election being conducted in all things according to law, and after the polls were closed said officers of said Faulkenstein township did meet at the office of said township clerk, in the township of Faulkenstein, county of Stanton and state of Kansas, for the purpose of and did then and there canvass the votes cast at said election held on the 3d day of December, 1889, as the law requires ; and said officers did then and there find that there had been 24 votes cast at said election, and that 21 votes were cast for said proposition, and that three votes were cast against said proposition ; and whereupon it was duly ordered and declared by the

honorable trustee, the clerk and the treasurer of said township of Faulkenstein, in the county of Stanton and state of Kansas, that said proposition to refund the said outstanding indebtedness by issuing 16 bonds of said township of Faulkenstein, of the denomination of $1,000 each, due 30 years after July 1, 1889, with interest at the rate of 6 per cent. per annum, payable semiannually, on July and January 1st of each year, was duly declared carried. That afterward, on the 4th day of December, 1889, all and each of said officers of said Faulkenstein township being present, and duly assembled, John Rambo appeared before said township officers and then and there surrendered to said township officers of the said township of Faulkenstein, in the county of Stanton and state of Kansas, all and each of the outstanding indebtedness, indicated by certain scrip which he was the holder and owner of, amounting to $16,000, and the said township treasurer of the said township of Faulkenstein, in the presence of the other members of the township board, did accept from the said John Rambo the said township scrip, aggregating $16,000, and then and there destroyed said scrip by burning the same ; and the said J. E. Tucker, trustee, W. B. Ward, clerk, and L. C. Manson, treasurer, of said township of Faulkenstein, in the county of Stanton and state of Kansas, did then and there make, execute and deliver unto the said John Rambo, in lieu of the said $16,000 of the township scrip that had been destroyed, 16 bonds of said township, of the denomination of $1,000 each, due in 30 years from July 1, 1889, dated on February 7, 1890, and bearing interest at the rate of 6 per cent. per annum, payable semiannually, and both principal and interest made payable at the fiscal agency of the state of Kansas in the city of New York, and said interest being evidenced by 60 coupons attached to each of said bonds, 59 of said coupons each being for the sum of $30 each, and one of said coupons being for the sum of $8.50, and each of said bonds, together with the coupons thereto attached, having been duly signed by J. E. Tucker, trustee, attested by W. B.

Ward, clerk, and countersigned by L. C. Manson, treasurer, of said township of Faulkenstein, in the county of Stanton and state of Kansas. No further business appearing, the board adjourned.—W. B. WARD, township clerk of the township of Faulkenstein, in the county of Stanton and state of Kansas."

This entry upon the record is claimed by the defendants in error to show the regularity of the action of the township officers, and, being a part of the records of the township and made by its officers, it is claimed that the township is estopped from denying it. This recites, in effect, that on December 4, 1889, John Rambo surrendered his scrip or warrants which were destroyed in his presence, and that the officers did then and there execute and deliver unto the said John Rambo, in lieu thereof, 16 bonds of $1,000 each, due in 30 years from July 1, 1889, dated February 7, 1890, etc. The court, in its findings of fact, finds that the signature of the clerk to this record is genuine; therefore the township is bound by it. The evidence seems clear that the typewritten paper of which this is a copy was never seen by any of the township officers until the meeting at Ward's house, on February 7, 1890, and that it was brought there by Pitzer. However, it seemed to Pitzer and Stein that these things should appear in the records to have occurred on December 4, 1889, in order successfully to rob the taxpayers of the township out of the $16,000, and as the township officers have seen fit to adopt it as their record, the township is estopped from denying its contents, and for the purposes of this case the statements therein contained will be taken as true. Fortunately, however, the records of the township made on December 21, 1889, on page 70 thereof, had apparently escaped their notice. The bonds had been executed and delivered to John Rambo, the alleged township cred-

itor, on December 4, 1889, so says the record intro-
duced by the defendant in error.    What was next
done with the bonds?    The record, at page 70, tells us.
The portion thereof which relates to the bonds reads
as follows:

  "December the 21st, 1889.    J. E. Tucker and W.
B. Ward met at Mr. Haas's bank, being the Stanton
County Bank, and receiving the sugar bonds there on
deposit, then and there did destroy by burning, in the
presence of Lewis Haas and N. R. Lyons.

W. B. WARD, <i>Clerk.</i><br>
J. E. TUCKER, <i>Trustee.</i>"

  Now, let us stop and recapitulate and see the con-
dition of things on December 21, 1889.    Warrants had
been issued to Rambo ; Rambo had agreed to compro-
mise for refunding bonds ; an election had been held,
and a majority had voted in favor of issuing the re-
funding bonds.    The warrants had been surrendered
by Rambo and destroyed.    The refunding bonds had
been executed and delivered to Rambo.    The bonds
had been destroyed by burning and Rambo ratified
their destruction.    This is a complete transaction.
The township now owes nothing to Rambo, and, so
far as the records are in evidence, it has no outstand-
ing indebtedness.    The defendants in error in their pe-
tition allege that the bonds in this suit were executed
on or about February 7, 1890, and have proven that
they were executed at that time at Ward's house.    On
February 7, 1890, the township had no indebtedness to
fund.    There was no offer to compromise.    There was
no election and no record of any by which any bonds
could have been issued other than those which had
been issued on December 4, 1889.    Of course if there
had been valid proceedings for the issuance of bonds
on December 4, 1889, and for any reason the issue
thereof had been postponed until February 7, 1890, .

and even if some error had been made in those they had attempted to issue, the officers could have destroyed them and issued others, and the record could have shown the facts as they occurred. But in this case the record recites the fact to be that the bonds were executed and delivered to John Rambo on December 4, 1889. This certainly ends this transaction so far as the issue of the bonds was concerned. The warrants had spent their force, and been canceled. The election had granted authority to the officers to issue the bonds and it had therefore spent its force. The authority conferred by the election had been exercised and the bonds were issued and delivered to John Rambo, and the authority granted by the election had ended. Nothing now remained for the township to do but to procure the bonds from John Rambo, with his assent, and destroy them. After that was done the transaction was completed, and in order to charge the township with any other indebtedness it must be thereafter created. After that was done, no other bonds could be issued which would bind the township unless the prerequisites required by law had been again performed. The bonds were procured with the assent of Rambo, and were destroyed. The whole transaction was therefore completed. Everything had been wiped off the slate, and all parties were at liberty to begin again or to refuse to do so, at their pleasure. The bonds which Pitzer and Stein induced the township board to issue on February 7, 1890, and which purport to be refunding bonds, were issued when there was no debt to fund, and no offer to compromise any such indebtedness had been made. There was no election held authorizing any issue of such bonds. The action of the board in pretending to issue the bonds and then exchange them

for a worthless contract to build a sugar-mill was absolutely without authority and void.   An inspection of the township records would have disclosed the contracts with Pitzer and the transaction with Soper to any one who might have examined them prior to the purchase of the bonds.   This would have been an additional circumstance to have put an intending purchaser upon his guard.   An inspection of the records in the office of the auditor of state would have shown a notation not to register any more bonds, and also that these bonds had been registered after the time for their registry had expired.   So far, therefore, as the records of the township are concerned, they show conclusively that the bonds were issued without any authority whatever, and if those records impart notice to a *bona fide* holder thereof, the bonds are absolutely void.

We come now to a consideration of the second question, viz. :  Is the township estopped from defending against the bonds by reason of the recitals therein contained ?

It has been uniformly held by the supreme court of the United States, that where by legislative enactment authority is given to a municipality or to its officers to issue municipal bonds, but only on some precedent condition, such as a popular vote, or in an amount limited by the amount of taxable property, and where it may be gathered from the enactment that the officers of the municipality were invested with power to decide whether those conditions have been complied with, their recital that they have been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality, for the reason that the recital itself is a decision of the fact by the tribunal selected by the legislature

to decide those questions.   This doctrine is announced in *Knox Co. v. Aspinwall*, 62 U. S. 544; *Coloma v. Eaves*, 92 id. 484, and many others.

The dissenting opinion of Justice Miller, concurred in by Justices Davis and Field, in 92 U. S. 646, is a strong one.   However, the doctrine announced in the majority opinion has been adopted by our supreme court in *The State, ex rel., v. Comm'rs of Kiowa Co.*, 39 Kan. 657, and cases therein cited.

The bonds in this case recite that they are "issued by virtue and *in accordance with* the provisions of sections 1, 2 and 3 of chapter 50 of the Laws of 1879," being a portion of the refunding law, and they also contain the following :

"And it is further certified and recited, that all acts, conditions and things required to be done precedent to and in the issuance of said bonds have been done, happened and performed in regular and due form as required by law."

Sections 1, 2 and 3 of chapter 50 of the Laws of 1879 read as follows :

"SECTION 1. That every county, every city of the first, second, or third class, the board of education of any city, every township, and every school district, is hereby authorized and empowered to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever, upon such terms as can be agreed upon, and to issue new bonds, with semiannual interest coupons attached, in payment for any sums so compromised; which bonds shall be issued at not less than par, shall not be for a longer period than 30 years, shall not exceed in amount the actual amount of outstanding indebtedness, and shall not draw a greater interest than 6 per cent. per annum.

"SEC. 2. Bonds issued under this act by any county shall be signed by the chairman of the board of county

14—2 APP.

commissioners, and attested by the county clerk, under the seal of the county. Bonds issued by any city shall be signed by the mayor, and attested by the city clerk, under the seal of the city. Bonds issued by any township shall be signed by the trustee, attested by the township clerk, and countersigned by the township treasurer. Bonds issued by the board of education of any city shall be signed by the president, and attested by the clerk of the board, under the seal of such board. Bonds issued by any school district shall be signed by the director, attested by the clerk, and countersigned by the treasurer of the school-district board, and the coupons shall be signed by the mayor, president, director, trustee or chairman of the board of county commissioners, and the clerks, respectively. Such bonds may be in any denominations, from $100 to $1,000, and made payable at such place as may be designated upon the face thereof, and they shall contain a recital that they are issued under this act.

" Sec. 3. When a compromise has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon to the holder of such indebtedness, in the manner prescribed in this act; but no bonds shall be issued under this act until the proper evidence of the indebtedness, for which the same are to be issued, shall be delivered up for cancellation : *Provided*, That no compromise by any township or school district shall be of any validity unless assented to by the legal voters of such township or school district, at an election or school meeting called for such purpose, of which election or school meeting at least 10 days' notice shall be given.''

This is the legislative enactment recited in the bonds by which authority is given the township officers to issue them. The conditions precedent, as gathered from the act, are an indebtedness, an agreement to compromise, an election after 10 days' notice, the canvass of the vote, the finding that a majority favor the compromise, and declaring such to be the result. After these things are done, the township trustee,

clerk and treasurer are authorized to execute and de-
liver the bonds. If these officers are invested with
the power to decide whether these conditions have
been complied with, and such power is vested by the
legislative enactment recited in the bonds, then this
decision is binding upon the township. A critical
examination of these three sections discloses the fact
that the township officers are by them invested with
the power to compromise and refund its matured and
maturing indebtedness, to issue refunding bonds there-
for, and to sign the bonds. They are prohibited from
issuing them until the proper evidences of indebtedness
are delivered up for cancellation; and it is provided
that the compromise shall be of no validity until an
election has been called, upon 10 days' notice, and
the voters have assented to the compromise. Who
is to determine whether there is a valid indebtedness
against the township? Evidently the township offi-
cers; but in order to determine that this is so, we must
rely upon other laws than the three sections mentioned.
They are to call an election, and give 10 days' notice
thereof. Who is to canvass the votes and declare
the result? Or, in other words, who is to determine
whether the legal voters have assented to the compro-
mise? It must be conceded that the three sections
recited in the bonds do not inform us. In order to be
informed upon this question we must look to other
sections of the statutes. Turning to paragraph 442 of
the General Statutes of 1889, we find that it reads as
follows:

"Before the issuing of any such bonds, the proper
officers of such county, city or township shall cause
an election to be held by the legal voters thereof, at
the usual place or places of holding elections in such
county, city or township, and to be conducted and the

returns thereof ascertained in the manner provided by law for holding general elections.''

In order to ascertain how general elections are conducted and the returns thereof ascertained, we must look to ¶¶ 7071 and 7072, supra, being §§ 9 and 10 of an act relating to townships and township officers, a portion of which reads as follows :

''The board of county commissioners shall constitute a board of canvassers. They. shall assemble at the office of the county clerk in their respective counties on the Friday following the election provided for in this act, and shall proceed to canvass the votes of the several townships of their counties for township officers voted for, in the same manner as the votes for other officers are canvassed. . . . They shall determine who have been elected to the several offices in each township in their respective counties, which determination they shall reduce to writing and cause a certified copy thereof to be filed in the office of the county clerk ; and it shall be the duty of the said county clerk to issue certificates of election to the persons so determined to be elected, and deliver or forward the same to the persons entitled thereto.''

We find by these sections (and not by the three sections mentioned in the bonds) what tribunal has been selected by the legislature to decide these questions, and we also find that the township officers do not compose the tribunal so selected, but that, instead of them, the board of canvassers, consisting of the board of county commissioners, is the tribunal selected to decide these questions, and the county clerk is to notify the township officers of the result. It must therefore clearly appear that the bonds to which the coupons sued upon were attached do not come within the rule laid down in *Knox County v. Aspinwall*, supra. We shall therefore proceed to consider the bonds freed from any statement contained therein which relates

to the result of an election. The language of said section 3, recited in the bonds, is of itself sufficient to require a person intending to purchase the bonds to inquire into the sufficiency of the election. It says that

"No compromise by any township or school district shall be of any *validity* unless assented to by the legal voters . . . at an election or school meeting called for that purpose, of which election . . . 10 days' notice shall be given."

This is a direct notice that such an election shall be held, and the purchaser is bound thereby. It has now been sufficiently shown in this opinion that the records do not disclose such a state of facts as entitles a *bona fide* holder of the bonds to recover, and that the township is not estopped from defending against the bonds by reason of the recitals contained in the bonds.

The only remaining question to be considered by us may be stated as follows: Is the defense as shown by the records sufficient to defeat a recovery? This question must be answered in the affirmative. The *bona fide* holders had no right to presume that they were issued under the circumstances which gave the requisite authority. They were bound to take notice of the township records. The township records show no authority whatever for the issuance of these bonds. No authority being shown by the records, the presumption is that none existed. Surely the authority to contract must exist before any protection as an innocent purchaser can be claimed by the holders of the bonds. The United States supreme court has said:

"In each case, the person dealing with the agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which

he relies comes within the power within which the agent acts. And this applies to every person who takes the paper afterward; for it is to be kept in mind that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued." (*Floyd Acceptances Cases*, 7 Wall. 676.)

Also, in another place:

"The supervisors possessed no authority to make the subscription or issue the bonds, in the first instance, without the previous sanction of the qualified voters of the county. The supervisors in that particular were the mere agents of the county. They could not therefore ratify a subscription without a vote of the county, because they could not make a subscription in the first instance without such authorization."

Judge Cooley, in his work on Constitutional Limitations, says that, whenever a want of power exists, a purchaser of securities is chargeable with notice of it, if the defect is disclosed by the corporate records, or, in that case, by other records, where the power is required to be shown.

We have not treated this last question as fully as we would have done but for the fact that it has been exhaustively discussed by Mr. Justice Brewer in *Lewis v. Comm'rs of Bourbon Co.*, 12 Kan. 186. We have only endeavored to make enough comments to render this opinion intelligible (and these comments have been largely taken from that case). For a full discussion of the principles upon which this decision is made, reference is made to that case and especially to pages 216 to 222 thereof. We must hold in this case that the township officers had no authority to issue the bonds which they issued on February 7, 1890, being the bonds set forth in this suit, and others, and the records of the township show that they had

no such power, but that what power they ever had was exercised in the issuance of the bonds which were destroyed on December 21, 1889.

In 1891 a tax was levied by the township to pay the interest on the bonds, which was paid to the county treasurer, but was never paid to the bondholders, because the township board protested against its payment. The defendants in error contend that the township ratified the acts of the township officers in issuing the bonds by levying this tax to pay interest thereon. This contention is not good. The tax was levied by the same officers who issued the bonds. The taxpayers could not hinder the township officers from issuing the bonds nor levying the tax. (*Craft v. Comm'rs of Jackson Co.*, 5 Kan. 518.) Their enforced silence can hardly be construed as an acquiesence. (*Lewis v. Comm'rs of Bourbon Co.*, supra.) The taxpayers at their first opportunity elected another township board, and the new board protested against the payment of the interest and refused to levy any tax for such payment.

After the findings of fact by the court had been announced, both the plaintiffs and defendant filed motions for judgment upon said findings of fact. The court reserved its ruling upon both of said motions until after its announcement and reading of its conclusions of law. The conclusions of law are as follows :

"The court concludes as a matter of law that the bonds, the coupons of which have been sued upon in this action, are legal and valid, and binding on said Faulkenstein township, and the coupons herein sued upon evidencing the interest on said bonds are also valid and binding on said township ; that the bonds are refunding bonds issued by the township to refund outstanding indebtedness, evidenced by township war-

rants to the same amount; that the issuance of the same was completed by the delivery of said bonds to the American Sugar Company, who receipted therefor, and contracted for their consideration; that the plaintiffs are the owners and holders of said bonds and coupons, being the purchasers thereof for a valuable consideration; that the plaintiffs are the *bona fide* holders and purchasers of said bonds, without notice of any defect; that the statement of Stein to one of the plaintiffs was not notice; that the records of the township clerk, county clerk and state auditor of matters concerning the issuance of the same, required by law to be kept by such officers, and in their offices, are not such as to impart notice to a *bona fide* holder for a valuable consideration.

"The court therefore concludes that said plaintiffs are the legal and *bona fide* holders and owners of said coupons sued upon, and are such without such legal notice of any defect, irregularity or illegality in the same as would deprive them of their right to enforcement of their claims and the collection of the same against the township, and that there is no such defect as would entitle the defendant to an effective defense against said obligations of the township."

The court erred in the above conclusions of law. The plaintiff in error is clearly entitled to judgment for costs.

The judgment of the district court is reversed, and this case is remanded to the court below with instructions to render judgment in favor of the plaintiff in error against the defendants in error for costs.

All the Judges concurring.