### BROWN v. INGALLS TP.

(Circuit Court, D. Kansas, Second Division. June 21, 1897.)

1. REFUNDING BONDS—BONA FIDE PURCHASERS—DEFECTS IN ORIGINAL BONDS.
   Refunding bonds issued in compliance with the statute authorizing them, and which recite a compliance with its provisions, are valid in the hands of bona fide purchasers, though the original bonds were void and the funding transaction was a mere subterfuge to avoid that objection.

2. SAME—NOTICE OF ELECTION.
   As the Kansas statute of 1879 authorizing townships to refund their outstanding indebtedness pursuant to a vote leaves to the determination of the township board what the notice of election shall contain, a notice which refers to the act, and otherwise gives the electors the information necessary to enable them to determine the questions submitted, is sufficient.

3. **SAME—BOARD AUTHORIZED TO CANVASS VOTE.**
 As that act makes no provision for canvassing the returns of the election therein provided for, a provision of the act of 1875, relating to the same subject-matter, the effect of which is to devolve upon the board of county commissioners the duty of canvassing the returns of the election provided for by that act, applies also to elections held under the act of 1879.

4. **SAME—CANVASS OF VOTE BY UNAUTHORIZED BOARD.**
 Refunding bonds issued pursuant to a vote canvassed by an unauthorized board are void.

5. **SAME—ESTOPPEL.**
 A township, by paying interest on bonds for a short time, does not estop itself from denying their validity on the ground that the vote pursuant to which they were issued was canvassed by an unauthorized board.

This is an action to recover on refunding bonds issued by defendant, a township of Gray county, Kan., under the provisions of chapter 50 of the Laws of Kansas enacted at the session of 1879.

The facts are that in 1889 the legislature of Kansas authorized its municipalities, including townships, to extend aid to companies and corporations engaged in the manufacture of sugar from sorghum cane by issuing bonds. The constitutionality of this act was considered doubtful at the time, and it has since been declared unconstitutional by several of the district courts of the state, and also by one of the judges of this court. In December, 1889, a company about to engage in the manufacture of sugar from sugar cane in Ingalls township presented a petition to the township board for $15,000 of its bonds, which was voted at an election ordered for that purpose. On February 10, 1890, the board issued these bonds, and on the next day agreed to submit to the people a proposition made by the sugar company to refund these bonds issued on the preceding day, and the validity of which was deemed doubtful. An election was ordered and held on this proposition on February 24, 1890. The returns of the election were made to the township board, and upon a canvass by that board the proposition was found to have been approved by the electors, whereupon the bonds in controversy were issued in lieu of those issued on February 10th. The bonds recite the act under which they were issued, and also the following: "And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuing of said bonds have been done, happened and performed in regular and due form as required by law." The interest coupons up to and including those maturing January 1, 1894, and six of those maturing July 1, 1894, were paid promptly. Since then nothing has been paid, and this action is instituted to recover on past-due coupons held by plaintiff as executrix of the last will of Ephraim A. Brown, deceased, who is admitted to have bought them in good faith for value before maturity.

Valentine, Godard & Valentine, for plaintiff.

M. W. Sutton and E. H. Madison, for defendant.

WILLIAMS, District Judge. There can be no doubt but that the bonds sued on were issued in order to avoid the doubts existing in the minds of the sugar company as to the constitutionality of the sugar bounty act. The original bonds were issued to the sugar company on February 10th, and on the next day the company made its proposition to the township board to have them refunded under the act of 1879, and an election for that purpose was ordered for February 24, 1890. Loan Ass'n v. Topeka, 20 Wall. 655, and Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, are decisive that the act authorizing municipal corporations to issue bonds in aid of private corporations was unconstitutional and void, and it naturally follows that the bonds issued to the sugar company under the provisions of that act

could not have been legally enforced against the defendant. In this compromise there was no reduction in amount, nor, so far as the record shows, any reduction in the rate of interest, or extension of time; the only difference in the two bonds being that the original bonds were absolutely void, while the bonds to be received in lieu of them, and issued under the refunding act, were deemed valid securities. Defendant sets up the following grounds as defenses to this action: First, the electors were not advised of the terms and conditions upon which the refunding bonds were to be issued; second, the votes cast were only canvassed by the township board, which was not authorized by law to do so, the county commissioners being the only body legally authorized to do so; third, the bonds were never registered in the office of the county clerk of the county, as required by law; fourth, there was no actual refunding of a valid indebtedness.

As to the last proposition, it cannot be seriously contended that bonds in the hands of an innocent purchaser, issued under the refunding act, can be defeated by showing that the original bonds were void. In many instances these new bonds are issued in compromise of evidences of indebtedness, the validity of which is in doubt, sometimes at a liberal discount; and in other instances it obtained for the municipality a lower rate of interest, or an extension of time. But if these bonds are issued under the provisions of the statute, and in compliance with the requirements thereof, it is a well-settled rule of law that the validity of the original bonds cannot be inquired into in an action on the refunding bonds by bona fide holders of them, if the bonds recite a compliance with the provisions of the law under which they are issued, as in the case at bar. Town of Coloma v. Eaves, 92 U. S. 484; County of Jasper v. Ballou, 103 U. S. 745; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 27 U. S. App. 244, 10 C. C. A. 637 and 62 Fed. 778. Of course, fraud vitiates everything, and had these bonds still been in the hands of the sugar company, or parties affected with notice, the question whether this entire funding transaction was not a mere subterfuge to avoid the issue which might have been raised against the first bonds would be an important one; but, the bonds having passed into the hands of a bona fide purchaser, that question could not in any way affect the result of this cause, and need not be discussed in the determination thereof.

Was the notice of election given by the township board so indefinite as to vitiate the election? The notice was as follows:

"For the purpose of voting upon a proposition for issuing fifteen bonds of said township of Ingalls, for the sum of one thousand dollars each, for the purpose of refunding the outstanding indebtedness of said township, under sections 1, 2, and 3 of an act of the legislature of the state of Kansas entitled 'An act to enable counties, municipalities, corporations, boards of education of any city and school district to refund their outstanding indebtedness,' which law took effect March 10, 1879. Said refunding bonds to bear interest at the rate of six per cent. per annum, payable semiannually, and to become due January 1st, 1920; the form of ballots to be cast to be in words and figures as follows, to wit: 'For issuing fifteen bonds, of the sum of one thousand dollars each, to refund the outstanding indebtedness of the township of Ingalls, county of Gray, state of Kansas.' "

As to what the effect of a want of a proper notice would be in a suit by a bona fide holder of the bonds, it is unnecessary to determine in

this action, as in my opinion the notice given was sufficient under the statute. The act only requires an assent of the legal voters at an election called for such purpose after at least 10 days' notice. What the notice is to contain is intrusted entirely to the township board, and, as in this instance the notice gives the electors sufficient information to enable them to determine the questions submitted, this defense necessarily fails. Belfast & M. L. R. Co. v. Inhabitants of Brooks, 60 Me. 568. Courts cannot indulge in the presumption that the officers elected by the people, and intrusted by them with the management of the affairs of the public, will willfully act in a manner tending to mislead them; but, on the contrary, all presumptions, in the absence of proof to the contrary, are in favor of the honesty of purpose of the public officials.

Was it essential to the validity of the bonds that the votes should be canvassed by the county commissioners, and by them only? If, under the laws of Kansas, a board of county commissioners is the only body which can legally canvass and declare the result of an election held for the purpose of authorizing the issue of refunding bonds, then these bonds are void; for there would be no authority in the township board to estop the township by certifying to a state of facts, the determination of which was not intrusted to it by law. Northern Bank of Toledo v. Porter Tp. Trustees, 110 U. S. 608, 4 Sup. Ct. 254; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315. The act itself does not make any provision by whom the votes of such an election should be canvassed or the result declared. It merely provides "that no compromise of any township or school district shall be of any validity unless assented to by the legal voters of said township or school district at an election or school meeting called for such purpose, of which election or meeting at least ten days' notice shall be given." Paragraph 466, Gen. St. 1889. Paragraph 442 of the General Statutes of 1889 (Laws 1875) provides that before the issuing of such funding bonds (as provided for by the act of 1875) an election should be held, "to be conducted and the returns thereof ascertained in the manner provided by law for holding general elections." The votes at general elections for township offices must be canvassed by the board of county commissioners. The act of 1875 was in force at the time of the passage of the act of 1879 under which these bonds were issued. The fact that no provision was made in the later act as to whom the returns of the election should be made, or by what board the votes should be canvassed and the result declared, raises a strong presumption that the legislature deemed the provisions of the act of 1875, which related to the same subject-matter, and was peculiarly applicable to the objects for which the act of 1879 was enacted, sufficient without additional legislation. Such is the construction adopted by the Kansas court of appeals in Faulkenstein Tp. v. Fitch, 2 Kan. App. 193, 43 Pac. 276; and although that court is not one of last resort, and for this reason its decisions are not conclusive on this court in the construction of a statute of the state, yet the opinion of the court shows a careful consideration of the questions of law involved, and coincides with the conclusions reached by me, independent of that decision. This view is also strengthened by the fact that section 4 of the act

of 1879 provides that the record of all bonds issued under the act shall be kept by the clerk of the county, and the bonds refunded, canceled, and preserved in the office of the county clerk, or destroyed by the board of county commissioners. If no returns of the election were to be sent to the board of county commissioners, and by it canvassed, then there is no provision of law how the commissioners would ever be advised of the refunding, or the county clerk enabled to keep record of the new bonds. Plaintiffs' testator could have ascertained from an examination of the records of the county commissioners that no returns of any election authorizing these bonds were ever made to them or canvassed by them. Failing to make that examination, he is chargeable constructively with notice of all facts which he could have ascertained by making the examination. The fact that the township did pay the interest on these bonds for a short time does not estop it from questioning their validity upon this ground. Loan Ass'n v. Topeka, supra.

As these views entitled defendant to a verdict, it is unnecessary to determine the issue raised by the third paragraph, whether the failure to have these bonds registered in the office of the county clerk affected their validity, although I find that there is no proof that they were ever registered. The case of West Plains Tp. v. Sage, 16 C. C. A. 553, 69 Fed. 943, is not applicable to the case at bar. The question of what board must canvass the vote and declare the result was not before the court in that case, and therefore not determined. Had this question been raised, and decided by the court against the township, such decision would have been conclusive on this court in the case at bar. But neither in the opinion of the majority of the court nor in the dissenting opinion is that question referred to. From these views it necessarily follows that the defendant is entitled to judgment, and it is so ordered.