## STATE ex rel. WEST, Atty. Gen., v. CITY OF SAPULPA et al.

No. 7679.    Opinion Filed October 10, 1916.

(160 Pac. 489.)

1. **MUNICIPAL CORPORATIONS—Bonds—Sale—Offer and Acceptance.** A proposition to buy a series of municipal bonds aggregating $260,000, for $260,000, not including coupons for accrued interest, which proposition is construed by the city as an offer to purchase said bonds at par and accepted as such, constitutes a complete contract leaving nothing open for future negotiations.

2. **CONTRACTS — Validity — Consideration — Supplemental Agreement.** Where an original contract does not contemplate the making of a subsequent supplemental agreement, the original consideration will not support such subsequent agreement, and a subsequent supplemental agreement not forming a part of the original contract or supported by the original consideration thereof, or a new consideration, is void as between the parties.

3. **CONTRACTS—Construction—Uncertainty.** By section 964, Revised Laws of 1910, it is provided that in contracts between a public officer or body as such and a private party, where uncertainty exists, it is presumed that such uncertainty was caused by, and the language of the contract should be most strongly interpreted against, the private party.

4. **MUNICIPAL CORPORATIONS — Bonds — Sales — Rights of Parties.** Persons dealing with a municipality do so with notice of its powers and the authority of its officers, and where a person purchases certain bonds from a city, not including coupons for accrued interest thereto attached, and said coupons are wrongfully delivered with the bonds purchased, such delivery does not convey any interest or right therein, and the city is not estopped thereby to deny liability thereon as against the purchaser or other person with notice.

5. **SAME.** Where coupons for accrued interest upon certain municipal bonds were wrongfully delivered to the purchaser of said bonds, who paid no consideration therefor, the fact that a tax was levied for the payment thereof does not estop the city to deny liability thereon or contest the validity thereof in the hands of a holder with notice.

6.    **SAME—Bona Fide Purchasers.** Where at the time a bank acquired certain coupons for interest upon municipal bonds same were detached and were past due. the bank took such coupons subject to any defense against them that existed.

7.    **BANKS AND BANKING—Assumption of Possession By Bank Commissioner—Effect.** Where the bank commissioner assumes possession of a state bank, he does not take the assets thereof for value and without notice, but subject to all claims and defenses that might have been interposed against the bank had it continued under its corporate management.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Tom D. McKeown, Assigned Judge.*

Petition by the State, on relation of Chas. West, Attorney General, for mandamus to the City of Sapulpa and another.    Judgment for defendants, and relator brings error.    Affirmed.

*S. P. Freeling,* Atty. Gen., *McDougal, Lytle & Allen,* and *Pryor & Rockwood,* for plaintiff in error.

*R. B. Thompson* and *Asp, Snyder, Owen & Lybrand,* for defendants in error.

HARDY, J.    The state, upon the relation of the Attorney General, filed suit in the district court of Creek county seeking mandamus against the City of Sapulpa and C. J. Wertzberger, commissioner of finance of said city, directing the payment of certain interest coupons found among the assets of the Farmers' & Merchants' Bank when taken in charge by the bank commissioner.    Defendants answered by general denial, and put in issue the title and good faith of plaintiff to the coupons in question.    Trial resulted in judgment for defendants, and plaintiff appeals.

The City of Sapulpa prior to January, 1910, had made provision for the issuance of $200,000 waterworks bonds, $50,000 sewer bonds, and $10,000 fire apparatus bonds. The bonds were dated January 1, 1910, but were, in fact,

delivered to purchasers some time in June, 1911, and this litigation arose over coupons representing interest claimed to be due before the bonds were in fact issued and delivered.

The contract between the city and the purchasers of the bonds is represented by the following written negotiations. The proposition to purchase is as follows:

"For two hundred thousand ($200,000) dollars legal issue waterworks bonds, fifty thousand ($50,000) dollars sewer bonds, and ten thousand ($10,000) dollars fire apparatus bonds, of Sapulpa, Oklahoma, delivered in Kansas City or Chicago, at our option, dated January 1, 1910, maturing twenty years from date without option, and bearing interest at the rate of 5 per cent. per annum, payable semi-annually, both principal and interest payable at the Oklahoma fiscal agency in the City and State of New York, bonds to be in the denomination of one thousand dollars, we will pay $260,000. * * *"

This proposition is dated February 13, 1911, and was considered and accepted by the city commissioners at a special meeting held on that date for the purpose of acting thereon, and the minutes show that the following proceedings were had:

"On motion by Murphy and second by Rice that we accept the offer of the proposed bond issue from Sutherlin & Co., of Kansas City, Mo., for the bonds at par, and we give him 5 per cent. commission when contract is passed and agreed upon by the city attorney."

This motion was carried, and thereupon adjournment was had until 7:30 p. m. of the same day, when the following proceedings were had:

"On motion by Rice and second by Murphy that the contract for the purchase of the bonds with Sutherlin & Co., of Kansas City, Missouri, be accepted and the mayor instructed to sign the same."

This motion was adopted, and the clerk was instructed to notify R. J. Edwards that the bonds were sold. The proposition submitted by Sutherlin & Co. bears this indorsement:

"Accepted at a legally held meeting of the mayor and the city commission of the City of Sapulpa at Sapulpa, Oklahoma, this, the 13th day of February, 1911. J. C. Benton, Mayor. Ira E. Anderson, City Clerk. [Seal.]"

On February 14th a petition was circulated among the business men of Sapulpa to ascertain their preference as to whether the accrued interest on said bonds, together with a commission of 5 per cent. for selling same, should be paid to the buyer. This petition was signed by a number of business men who indicated their preference thereon, and a call was issued by the president of the board for a special meeting of the city commissioners at 2 o'clock p. m. of that day, "for the purpose of drawing a contract with Sutherlin & Co., of Kansas City, Mo., to provide for paying a commission to said person or firm above named for the sale of the water, sewer, and fire apparatus bonds." At this meeting "the president of the board and the city clerk were authorized to sign the commission contract with Sutherlin & Co., of Kansas City, Mo., for the 5 per cent. commission," and thereafter a communication was addressed to Sutherlin & Co. agreeing, in view of their purchasing said bonds, to accompany the same, when legally issued and delivered, with a good and sufficient certified check for 5 per cent. of the amount of bonds as a commission in placing said issue of bonds, the check to be delivered upon payment of the purchase price of the entire issue.

Upon this record plaintiff insists that the coupons for accrued interest were sold and delivered, and that it is entitled to collect the amount thereof. The proposition of February 13th and its acceptance constituted a complete

554　　SUPREME COURT OF OKLAHOMA.

State ex rel. West. Atty. Gen., v. City of Sapulpa et al.

contract for the sale of said bonds at par, not including the coupons in question, and upon the face thereof nothing was left open except that the contract should be passed and agreed upon by the city attorney, which was done, and the acceptance thereof in writing executed on behalf of the city on that date. The proposition was to pay $260,000 in money for the total issue of bonds, aggregating $260,000 par value. No mention was made of coupons for accrued interest, and the city expressly accepted the proposition for the bonds at par. The rule is that, where bonds draw interest from their date, and are not disposed of until after that date, a sale thereof at par must include a sum equal to the face value of said bonds and the accrued interest attached. Dillon, Mun. Corp. sec. 895. The fact that the amount paid for said bonds equaled the face value thereof without accrued interest, and that no mention was made in the proposition of coupons for accrued interest, and that the city commissioners construed the proposition as one to purchase said bonds at par, showed that a sale of the coupons in question was not intended. This is made the more apparent by the proceedings of February 14th. One Burnett, the agent of Sutherlin & Co., was instrumental in circulating the petition among the business men upon which the special meeting of the commissioners was called. The proceedings of this special meeting show clearly that the board of city commissioners did not intend to pay Sutherlin & Co. the accrued interest on said bonds. The only place where any reference is made to the accrued interest is in the petition circulated among the business men. If the proceedings of February 14th be construed as having any legal and binding force, the only effect that could be given thereto would be to authorize the payment of a five per cent. commission, which was included in the original acceptance; and by rejecting the proposition to

give the accrued interest the commissioners indicated an express intention not to do anything of the kind. The original proposition and acceptance could not furnish a consideration for a subsequent gift of the accrued interest. In 6 R. C. L. 675, the law is stated as follows:

"But, where the original contract does not contemplate the making of a subsequent agreement, the original consideration will not support such subsequent agreement. Hence a subsequent agreement not forming a part of an original contract or supported by the original consideration thereof or by any new consideration is void."

There was no new consideration paid or agreed to be paid for the purchase of the coupons in question, and, even if the proceedings of the 14th evidenced an intention to transfer them, the lack of consideration therefor would render the proceedings invalid as between the parties. The city commissioners were not authorized to barter away the city's funds or credit without consideration, and no intendment of the law can be drawn favorable to the wrongful dissipation of the city's funds in the giving away of interest accruing at a time when the bonds had not yet passed out of the hands of the city.

The trial court declared the law to be that in the construction of contracts between individuals and corporations, on the one hand, and municipal corporations or bodies, on the other, the contract should be construed more strongly against the individual, and held that the date of said bonds, January 1, 1910, was descriptive thereof, and that the coupons in controversy had not been sold, and it is urged that this declaration by the court was erroneous.

Section 964, Rev. Laws 1910, provides:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most

strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such a party, except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

The contract in question was with the city as a public body in its public capacity, and was within the rule prescribed by said section. The rule announced by the trial court was but an application of the statute to the contract in question, and in this there was no error. The proposition to purchase was prepared and submitted by Sutherlin & Co., and, if any uncertainty existed therein, it should be construed most strongly against them, for it lay within their power to expressly include within the proposition the coupons for accrued interest if such was their intention, and thereby to have avoided any uncertainty in the interpretation thereof, and under this section of the statute and the general rule of law the uncertainty caused by them should be most strongly interpreted against them. 6 R. C. L. 854; 2 Elliott on Contracts, 1528.

Plaintiff insists that contemporaneous construction of the contract by the city and its officers placed a different interpretation thereon, and in pursuance thereof said coupons were delivered to Sutherlin & Co., and ordinances passed levying a tax to pay the same. From what has already been said it is apparent that the proceedings of the city commissioners nowhere discloses an intention to sell said coupons. The mayor refused to attend the meeting of February 14th, because, in his opinion, the bonds had already been sold, and the contract closed the day previous, and he thought the city had no right to give the coupons away, and that, if he participated in the meeting, he would be liable for his proportionate share thereof. Two of the commissioners, Murphy and Loudermilk, did not under-

stand that said coupons were sold with the bonds, and tes-
testified that they did not so intend by the proceedings of
February 14th. The other commissioner, Rice, who was
president of the board and acting finance commissioner,
testified that he thought Sutherlin & Co. were entitled to
the coupons as "earned interest," and that the coupons
were left attached to the bonds upon the advice of the city
attorney. Rice helped in the preparation of the petition
circulated among, the business men, and admitted upon
cross-examination that "there was some change after the
sale was made." This evidence indicates that the mayor
and all of the city commissioners were of the opinion that
the bonds were sold on the 13th. By resolution of April
29th the commissioner of finance was authorized to deliver
the bonds to Sutherlin & Co. and take credit for same. No
mention was made of the coupons. After being executed
the bonds were taken by Rice, acting finance commissioner,
Clay Wertzberger, city auditor, and Bates B. Burnett,
cashier of the Farmers' & Merchants' Bank, to Kansas City
about May 1, 1911, where, failing to obtain the money
thereon, Rice turned them over to Burnett, taking a receipt
therefor in the name of the Farmers' & Merchants' Bank.
Rice never saw the bonds thereafter, and the city took no
part in their subsequent delivery. Burnett delivered them
to Sutherlin & Co. some time in June, 1911, receiving in
exchange therefor a draft on the Commerce Trust Com-
pany for $260,000.

Sutherlin & Co. required the city to furnish them with
a full certified copy of all proceedings had in the issuance
of said bonds that would evidence their legality to the
complete satisfaction of their attorney, and therefore, in
addition to the actual knowledge of their agent, Burnett,
had record notice of the various steps taken, and of the
authority of the finance commissioner in delivering said

bonds, and received said coupons knowing same had not been purchased by them and that delivery thereof by Rice to Burnett and by Burnett to them was unauthorized and without consideration. *Gardner v. School District No. 87*, 34 Okla. 716, 126 Pac. 1018; *In re Town of Afton*, 43 Okla. 720, 144 Pac. 184, L. R. A. 1915D, 978; *Anthony v. County of Jasper*, 101 U. S. 693, 25 L. Ed. 1005; *City of Atchison v. Butcher*, 3 Kan. 104; *Portsmouth Savings Bank v. Ashby*, 91 Mich. 670, 52 N. W. 74, 30 Am. St. Rep. 511.

If the ordinance levying taxes for the payment of interest upon the bonds be construed to include interest represented by the coupons in question, the fact that a tax was levied for the payment thereof would not estop the city to contest its liability thereon nor to contest the validity thereof where the city refused to pay such interest and denied liability at the first opportunity. *City of Memphis v. Bethel* (Tenn.) 17 S. W. 191; *Bogart v. Lamotte Tp.*, 79 Mich. 294, 44 N. W. 612; *Faulkenstein Tp. v. Fitch*, 2 Kan. App. 193, 43 Pac. 276.

The activity of February 14th, when an effort was made to embody in the contract provisions with reference to the coupons and commissions, indicates that it was understood that the coupons were not to be delivered with the bonds, and the failure of the commissioners to authorize this to be done can only show that they refused to comply with the desires of Burnett and his principal in reference thereto. In order for the acts of the parties in the contemporaneous construction of a contract to be entitled to much weight in the construction thereof it should appear with reasonable certainty that they were the acts of both parties, done with knowledge and in view of a purpose at least consistent with that to which they are sought to be applied. 6 R. C. L. 852. One of the issues in the case was whether the bank was a *bona fide* holder of said coupons, and the

court found all the issues in favor of defendants, which included a finding that the bank had notice and knowledge of all defenses against said coupons. At the time they were delivered to Sutherlin & Co. and at the time the bank acquired possession thereof, they were past due, and, under the rule that municipal bonds and coupons payable to bearer are subject to the same rules as other negotiable paper, this fact would put the bank upon notice as to any defenses against said coupons. Dillon on Mun. Corp. sec. 879; Hainer's Modern Law Mun., sec. 344; *Ind. & Ill. Cent. Ry. Co. v. Sprague,* 103 U. S. 756, 26 L. Ed. 554.

In addition to this rule of law, Bates B. Burnett, cashier of the bank with whom said bonds were left by Rice, commissioner of finance, had actual knowledge of the transactions resulting in the sale of the bonds prior to and at the time same came into possession of the bank. The coupons were first presented for collection by him when he stated that the bank had no interest therein except that they were sent to it for collection by the bond buyers. Birch C. Burnett, agent of Sutherlin & Co., claimed to have purchased them from Sutherlin & Co., but could not tell how much he paid for them or whether a portion of the purchase price was allowed on his commission or not. He and his brother, Bates B. Burnett, claimed the coupons had been sold to the bank upon indebtedness owing by him. He did not know how much this indebtedness was, nor was there any record of the bank showing any credit thereon. The Burnetts claimed to have turned these books over to the banking board, but it is shown that the banking board had not received them, and in contempt proceedings against the Burnetts secured an order to produce said books, which order was never complied with.

The coupons not having been sold by the city at the time the bonds were negotiated, and the delivery thereof

to the purchaser of the bonds being without authority, no right or title thereto passed, and the bank, having both actual and constructive notice of the facts, took them subject to all defenses which existed, and when the bank commissioner took charge of the Farmers' & Merchants' Bank the state took no greater rights therein than those possessed by the bank. *Ward v. Okla. State Bank of Atoka,* 51 Okla. 193, 151 Pac. 852; *Brisco v. Hamer,* 50 Okla. 281, 150 Pac. 1101.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur, except KANE, C. J., absent.