2006 OK CIV APP 141

**FIRST ENTERPRISE BANK, Plaintiff/Appellant,**

v.

**BE–GRAPHIC, INC.; Jeffery G. Behymer, Defendants,**

**and**

**Carrie R. Behymer, a/k/a Carrie R. Moberly, Defendant/Appellee.**

**No. 102,383.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 16, 2006.

Rehearing Denied Aug. 4, 2006.

Certiorari Denied Oct. 30, 2006.

---

Michael N. Brown, Law Offices of Michael N. Brown, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Ross A. Plourde, Jeff L. Todd, McAfee & Taft, Oklahoma City, OK, for Defendant/Appellee.

Opinion by CAROL M. HANSEN, Judge.

¶1 Plaintiff/Appellant, First Enterprise Bank (Bank), seeks review of the trial court's judgment in favor of Defendant/Appellee, Carrie R. Moberly, on Moberly's counterclaim against Bank in Bank's action to fore-close mortgages securing loans it made to Defendant, BeGraphic, Inc. (Principal), a printing business owned by Moberly's former husband, Defendant Jeffery G. Behymer. At issue is whether Moberly contractually waived the statutory defense of 15 O.S.2001 § 338 and 15 O.S.2001 § 377,[1] which exonerates a surety from liability if the creditor alters the original obligation without the surety's consent. We hold the trial court properly construed the contractual waiver not to include waiver of the alteration defense as a matter of law, and its fact findings are not against the clear weight of the evidence.

¶2 On February 28, 1996, Bank made a $50,000.00 line-of-credit loan (LOC Loan) to Principal, as Loan No. 15394. Behymer and Moberly, then married, granted a second mortgage (LOC Mortgage) on their residence to secure the note, "together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement." The mortgage provided,

> Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

¶3 On April 19, 1996, Bank and Principal agreed to increase the amount of the LOC Loan to $100,000.00 and to extend the maturity date. Behymer and Moberly signed a modification of mortgage agreeing to the changes. On April 10, 1997, Bank and Principal agreed to extend the maturity date of the $100,000.00 LOC Loan by one year.

---

1. 15 O.S.2001 § 338 provides,
   A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.
   15 O.S.2001 § 377 provides,
   A surety is exonerated:

1. In like manner with a guarantor.
2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or,
3. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do.

Behymer and Moberly again signed a modification of mortgage agreeing to the change.

¶4 On February 17, 1998, Bank made Loan No. 15812 to Principal in the amount of $488,478.50 (Heidelberg Loan) for the purchase of a Heidelberg Press. Behymer and Moberly signed a mortgage (Heidelberg Mortgage) on their residence to secure the loan. The mortgage contained language similar to that in the 1996 mortgage described above. Behymer signed a guaranty agreement promising to pay Principal's indebtedness to Bank. The guaranty included the following waiver language:

> Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; ... (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness....

It also included broad language authorizing Bank to take a variety of actions, including modifying Principal's indebtedness, without notice to Behymer.

¶5 On March 4, 1998, Bank and Principal agreed to increase the Heidelberg Loan to $513,478.50, and on May 26, 1998, they agreed to increase it to $578,018.50. The record does not reflect mortgage modifications accompanied these increases. On September 15, 1998, Bank and Principal increased the LOC Loan to $200,000.00 and extended its maturity date to September 15, 1999. Behymer and Moberly signed a mortgage modification agreeing to these two changes, but the document identified the Heidelberg Mortgage, by the book and page where recorded, as the mortgage being modified, rather than the LOC Mortgage. On April 16, 1999, Bank and Principal increased the Heidelberg Loan to $622,148.16.

¶6 Moberly petitioned for divorce from Behymer in February 2000. The divorce decree, entered in September 2000, awarded Principal to Behymer and the parties' residence to Moberly. It required Behymer to hold Moberly harmless from Principal's indebtedness to Bank secured by the residence and from any other debt of Principal.

¶7 Principal and Bank agreed to extensions of the Heidelberg Loan on March 1, 2000, and again on August 21, 2000. On July 31, 2000, they agreed to increase the LOC Loan to $232,249.44 and extend its maturity date. According to Moberly, on July 31, 2000, Behymer asked her to sign a mortgage modification approving the increase and extension of the LOC Loan, but she refused. Whether the signature appearing on the mortgage modification is Moberly's is disputed. Bank later released that mortgage modification. On November 21, 2000, Principal and Bank agreed to extend the LOC Loan. On January 23, 2001, Principal and Bank agreed to extend the Heidelberg Loan and increase its amount by $20,000.00.

¶8 Principal defaulted on the notes and Behymer filed for bankruptcy. Bank brought the present suit on the notes and mortgages. Moberly answered and counterclaimed for declaratory judgment that she was exonerated from her obligations as surety and for damages arising from Bank's failure to timely release the mortgages after exoneration. Moberly cross claimed against Principal and Behymer for indemnification. Bank answered and denied liability. Behymer answered, disclaimed any interest in the real estate being foreclosed, and asserted his personal liability was discharged in bankruptcy. Moberly later dismissed her claim against Behymer. Principal did not answer.

¶9 At bench trial on March 23 and 24, 2005, Bank asked the trial court to reform the mortgage modification of September 15, 1998, to modify the LOC Mortgage rather than the Heidelberg Mortgage, and to grant judgment *in rem* against the property. Moberly sought a determination she was exonerated as surety by the modifications made without her consent.

¶10 After trial, the trial court adopted findings of fact and conclusions of law. It found the September 15, 1998 mortgage modified the Heidelberg Mortgage so that it covered the LOC Loan, the modification conformed to Moberly's understanding as to what the house secured, and Moberly was not mistaken in signing the modification as

written. It concluded the modification should not be reformed because Bank failed to show a mutual mistake.

¶ 11 The trial court found the mortgages did not contain language waiving Moberly's surety rights or authorizing Bank to modify the terms of the loans without notice to Moberly. It found Bank modified both loans without Moberly's consent and concluded Moberly was exonerated from liability under the mortgages. It granted judgment against Bank on its foreclosure claim against Moberly, and in favor of Moberly on her declaratory judgment claim, declaring the lien created by the LOC Mortgage discharged and exonerated. Bank appeals from this judgment.

■ ¶ 12 At trial, only the parties' rights *in rem* were at issue; therefore, the trial court sat in equity. *Mid–State Homes, Inc. v. Donnelly,* 1978 OK 15, 574 P.2d 1036, 1037. In a case of equitable cognizance, we will affirm the judgment of the trial court unless clearly against the weight of the evidence or contrary to law or established principles of equity. *Murdock v. Loeffelholz,* 1966 OK 242, 421 P.2d 236, 237.

### I

■ ¶ 13 Bank's first contention is the trial court erred in exonerating the mortgages because Moberly expressly waived all defenses under any law which would prevent Bank from bringing an action against her to enforce the mortgages. Bank argues the waiver language in the mortgage was so broad it "eliminated not only anti-deficiency defenses, but it also eliminated *all rights or defenses* arising under *any law* which a grantor of a mortgage could assert against [Bank] to prevent [Bank] from enforcing its mortgages."

¶ 14 Bank does not cite any case law in which similar language was construed so broadly. Each of the three cases cited by Bank, *Founders Bank and Trust Co. v. Upsher,* 1992 OK 35, 830 P.2d 1355, *Local Federal Bank, F.S.B. v. JICO, Inc.,* 1992 OK CIV APP 146, 842 P.2d 368, and *Haines Pipeline Const., Inc. v. Exline Gas Systems, Inc.,* 1996 OK CIV APP 75, 921 P.2d 955, involved waiver of the anti-deficiency defense provided by 12 O.S.2001 § 686. That section prohibits deficiency judgment in foreclosure actions except by motion within 90 days of

sheriff's sale and requires set-off of the fair market value of the property in actions seeking only money judgment and not foreclosure.

■ ¶ 15 As in the three cases cited, the language of the waiver in this case is also a waiver of the § 686 defenses. In quoting the waiver in its brief for this Court, Bank deleted the part of the language that was inconsistent with its argument the waiver was a broad waiver of all defenses. We must interpret a contract "so as to give effect to the intent of the parties at the time the contract was formed," considering the contract "as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context." *Mercury Inv. Co. v. F.W. Woolworth Co.,* 1985 OK 38, 706 P.2d 523, 529. We cannot concentrate on the general language within the waiver while ignoring the specific language. The specific language modifies and limits the general language, to express the parties' intent that the grantor waived any statutory prohibition on the lender's bringing an action for deficiency against the grantor, separate from any action against the principal or against the property *in rem.* The language cannot be broadened into a waiver of all defenses arising under any law, as Bank contends. The trial court did not err in refusing to give it such an interpretation.

### II

■ ¶ 16 Bank's next contention is the trial court erred in exonerating the mortgages because Moberly was estopped from claiming the mortgages were unenforceable by receiving the benefits of the loans. Bank cites 16 O.S.2001 § 11, which provides in relevant part,

Any person or corporation, having knowingly received and accepted the benefits or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same....

The validity of the mortgages at the time they were made or executed was not at issue

below. The trial court did not grant judgment to Moberly based on any infirmity in the mortgages themselves; rather it found Bank and Principal modified Principal's obligation without notice to Moberly *after* the mortgages were made, thereby exonerating her liability as surety. An alteration in the terms of a contract without the consent of the surety releases the surety, even if the surety "may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." *Whale v. Rice*, 1935 OK 838, 173 Okla. 530, 49 P.2d 737, 741 (quoting *Miller v. Stewart*, 22 U.S. 680, 6 L.Ed. 189, 9 Wheat. 680 (1824)). The trial court did not err in failing to find Moberly estopped from claiming the mortgages were unenforceable against her.

### III

¶ 17 Bank next contends the trial court erred in exonerating the mortgages because change in the form of the underlying debt did not discharge the mortgages. It argues the note modifications were merely renewals of the earlier notes. It also argues Moberly was not a surety to the extent she acquired Behymer's half interest in the property upon divorce.

¶ 18 Bank raises the latter issue for the first time on appeal. At trial, Bank did not object when Moberly's attorney stated the parties stipulated Moberly was a surety. We will not entertain a theory for reversal advanced for the first time on appeal. *McKinney v. Harrington*, 1993 OK 88, 855 P.2d 602, 604.

¶ 19 In *Foster v. First Nat. Bank & Trust Co. of Tulsa*, 1937 OK 90, 179 Okla. 496, 66 P.2d 79, the Court held changes in the form of renewal notes extending the time of payment was not such an alteration that released the property of a surety who mortgaged the property to secure the debt of another. However, in that case, the surety agreement expressly stated the surety consented to extensions or renewals without notice. *Id.* at 80. The Court recognized as a general rule "an extension of time of payment" without the consent of the surety operates to release the property of the surety. *Id.* at 81.

¶ 20 Given Moberly's status as a surety, the issue below was whether Bank modified Principal's original obligations without Moberly's consent. The trial court found Bank modified the Heidelberg Loan on March 4, 1998, May 26, 1998, and April 16, 1999, by increasing its amount to $513,478.50, $578,018.50, and $622,148.16, respectively, and these increases were material alterations of which Moberly was unaware and to which she did not consent. The trial court found Bank modified the Heidelberg Loan on March 1, 2000, and August 21, 2000, by extending the maturity date, and these extensions were material alterations of which Moberly was unaware and to which she did not consent. It found Bank again modified the Heidelberg Loan without Moberly's knowledge and consent on January 23, 2001, by extending its maturity date and by advancing an additional $20,000.00 to Principal. The trial court found Bank modified the LOC Loan without Moberly's knowledge and consent on July 31, 2000, by increasing its amount by $32,249.44 and extending its maturity date, and on November 21, 2000, by extending its maturity date.

¶ 21 The trial court's fact findings of material alterations included not only extensions of the time for payment but also increases in the amount of the loan as to both the Heidelberg Loan and the LOC Loan. Its findings are supported by the documents in the record and by Moberly's testimony. Therefore, we are unable to find they are against the clear weight of the evidence.

### IV

¶ 22 Bank's fourth contention is the trial court erred in exonerating the mortgages because Moberly consented both expressly and impliedly to the modifications. It argues Moberly expressly consented to modifications by language in the mortgages defining the "Note" secured by each mortgage to include "modifications of" the original obligation. The trial court found this language was not advance authorization to modify the obligations without notice to Moberly. We agree. In contrast, the language in Behymer's guaranty agreement contains language that "authorizes Lender ... without notice

... to alter ... the time for payment or other terms of the indebtedness." Such language constitutes an advance authorization to modify the original obligation without notice; it is lacking in the mortgage.

¶ 23 Bank also argues Moberly impliedly consented to the modifications by signing a corporate resolution as secretary of Principal authorizing Behymer to act on behalf of the corporation, and by signing the divorce decree acknowledging the existence of the mortgages. These documents are also lacking any language consenting to modifications without notice or ratifying past modifications. The trial court did not err in finding Moberly did not consent to the later modifications.

### V

¶ 24 Bank's last contention is the trial court erred in failing to reform the mortgage modification of September 15, 1998 to secure the LOC Loan. Bank argues the modification made reference to the Heidelberg Mortgage rather than the LOC Mortgage because of a clerical error by a loan processor, and it should be reformed to refer to the LOC Mortgage and Loan.

¶ 25 In *Thompson v. Estate of Coffield,* 1995 OK 16, 894 P.2d 1065, 1067–1068 (citations and footnotes omitted), the Court discussed the requirements for reformation:

> Reformation is a remedy to make a written contract conform to the antecedent expressions on which the parties based their agreement, and insofar as the written document differs from these antecedent agreements, it will be reformed. To obtain reformation, Seller must show an (1) instrument representing an antecedent agreement which should be reformed, (2) mutual mistake or mistake by one party and inequitable conduct on the part of the other, which results in an instrument that does not reflect what either party intended, and (3) proof of these elements by clear and convincing evidence. In the absence of mutual mistake or unilateral mistake plus inequitable conduct, the equitable remedy of reformation will not stand.

¶ 26 The trial court's fact finding that Moberly did not sign the mortgage modification by mistake is supported by Moberly's testimony, and therefore is not against the clear weight of the evidence. It did not err in concluding Bank failed to prove mutual mistake.

¶ 27 For the foregoing reasons, the judgment of the trial court is AFFIRMED. Moberly's motion for appeal-related attorney fees pursuant to 42 O.S.2001 § 176 is granted. This matter is REMANDED for determination of the amount of attorney fees pursuant to *Burk v. City of Okla. City,* 1979 OK 115, 598 P.2d 659.

BELL, P.J., and JOPLIN, J., concur.