2007 OK 81

Pete WYLIE, Wanda Evaige, Eddie Whitworth, Robert Meadors, and Jim Smith in their official capacity as the Trustees of the Employee Retirement System of Frederick, Oklahoma, Plaintiffs/Appellees,

v.

Margaret CHESSER, a/k/a Margaret Lavern Chesser, Defendant/Appellant.

No. 102,015.

Supreme Court of Oklahoma.

Oct. 23, 2007.

Rehearing Denied Dec. 4, 2007.

Ty Johnson, Massad, Evans & Kent, Inc., Frederick, OK, for Plaintiffs/Appellees.

O. Christopher Meyers, Lawton, OK, for Defendant/Appellant.

PER CURIAM.

¶ 1 This case requires a decision as to whether the trial court erred in granting summary judgment to Plaintiffs/Appellees, Trustees of the Employee Retirement System of Frederick, Oklahoma in the declaratory judgment action they brought against Defendant/Appellant, Margaret Chesser, a/k/a Margaret Lavern Chesser. In the action the Trustees sought a ruling Appellant was not entitled to continuation of the monthly disability benefit her deceased husband, a former City of Frederick employee, was receiving under the System's terms when he died. The Court of Civil Appeals (COCA), Division IV reversed and remanded with direction to the trial court to enter judgment for Appellant. We vacate the COCA's opinion and affirm the trial court judgment.

## STANDARD OF REVIEW

¶ 2 Initially we note that each side to this litigation sought summary judgment in the trial court based on the written terms of the System plan which was adopted by the City of Frederick by municipal ordinance in 1966. The parties agreed there was no substantial controversy as to any material fact and that the matter was ripe for decision as a matter of law. Our review of the record shows there is no substantial controversy as to any material fact and the case may be determined as a matter of law. We also note that the interpretation or meaning of the System's terms are before us for review, a Sys-

tem that as noted was adopted by municipal ordinance.[1]

▮ ¶ 3 In reviewing a summary judgment grant an appellate court engages in a plenary, independent and non-deferential reexamination of the trial court's ruling, i.e., a *de novo* review. *In re Estate of MacFarline*, 2000 OK 87, ¶ 3, 14 P.3d 551, 554–555 (quoting *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053 and citing *Manley v. Brown*, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448). Summary judgment is warranted only when "there is no substantial controversy as to the material facts and . . . one of the parties is entitled to judgment as a matter of law[.]" 12 O.S.Supp.2006, Ch. 2, App., Rules for the District Courts of Oklahoma, Rule 13(e). For summary judgment for a party to be appropriate the evidentiary materials submitted must demonstrate undisputed facts on material issues supporting but a single inference in favor of that party. *In the Matter of the Assessment of Real Property of Integris Realty Corp.*, 2002 OK 85, ¶ 5, 58 P.3d 200, 202–203.

▮ ¶ 4 The determination of legal questions involving statutory interpretation are also subject to *de novo* appellate review. *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654 (citing *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5). The basic rules as to the meaning of statutes are applicable to municipal ordinances. *See Tinker Investment & Mortgage Corp. v. City of Midwest City*, 1994 OK 41, 873 P.2d 1029, 1038 and *Oklahoma Journal Publishing Co. v. City of Oklahoma City*, 1979 OK CIV APP 42, 620 P.2d 452, 454.

## FACTS, PROCEDURAL HISTORY AND OVERVIEW

¶ 5 In 1966 the City of Frederick passed Ordinance No. 364 which adopted the System plan at issue in this case.[2] Charles Chesser was employed by Frederick for about twenty-one (21) years until his retirement for disability in late 1981. At such time, pursuant to the System's provisions, he began receiving disability benefits of two hundred sixty-eight dollars and seventy-six cents ($268.76) per month. He received this monthly benefit until his death in April 1999, when the payments ceased. It is undisputed Appellant is Charles' widow/surviving spouse, having married him in 1972, and that she has not remarried. It is also undisputed that Charles contributed a portion of his monthly pay to the Employee Retirement System of Frederick as required by the System plan.[3]

1. In cases of actual controversy Oklahoma law allows a declaratory judgment action to be brought in district court for a determination of the construction or validity of a municipal ordinance. 12 O.S.2001, § 1651 et seq., as amended. Title 12 O.S.Supp.2004, § 1651 provides:

 District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

 Section 1651 was last amended in 2004. 2004 Okla.Sess.Laws, Ch. 519, § 1.

2. Ordinance No. 364 (a copy of which was attached to the trial court Petition for Declaratory Judgment of the Plaintiffs/Appellees, Trustees of the Employee Retirement System of Frederick, Oklahoma) was passed and approved by the Mayor and Councilmen of the City of Frederick in September 1966. Section 1 of the Ordinance provides:

 That pursuant to the authority conferred by the laws of the State of Oklahoma, and for the purpose of encouraging continuity and meritorious service on the part of City employees and thereby promote public efficiency, there is hereby authorized, created, established, approved and adopted, effective as of July 1, 1966, the Pension Plan designated "Employee Retirement System of Frederick, Oklahoma" (hereinafter called "System"), an executed counterpart of which is marked "Exhibit A" and attached hereto as part hereof.

3. Unnumbered paragraph two of the Preamble to the System plan provides, "[t]he Employer, as part of the aforesaid Retirement System, creates

¶ 6 At some point after Charles died Appellant applied to Frederick for a continuation of the monthly disability benefit she claimed entitlement to as his surviving spouse.[4] The Trustees refused to grant her claim. Instead, they brought a declaratory judgment action against her in the district court, in effect, arguing the System's terms did not intend for continuation of the benefit. Appellant answered and counterclaimed, in essence, arguing the System's terms did allow for continuation of the benefit to her as Charles' surviving spouse.

¶ 7 Both sides moved for summary judgment, agreeing there was no material fact in substantial controversy and that the case was subject to decision as a matter of law based on the interpretation and meaning of the System's terms. To support her claim to entitlement to continuation of the monthly disability benefit Appellant places primary reliance on subsection 6.1(B)(2) of the System plan, a part of Article VI.[5] Article VI provides in pertinent part:

6.1 *Spouse's Pensions*

A. *Eligibility Requirements:*

1. *In–Service Death:* The surviving spouse of deceased Employee shall be eligible for a Spouse's Pension with payments commencing on the first day of the month coinciding with or next following the Employee's date of death and payable for the spouse's lifetime, or until the spouse's remarriage, provided that the Employee, as of the date of his or her death, (a) was continuing in the active service of the Employer, (b) had completed 10 or more years of service, (c) had not retired, and (d) was not legally separated from the surviving spouse.

B. *Amount of Spouse's Pension:*

1. *In–Service Death:* A surviving spouse who meets the eligibility requirements under Paragraph 1 of Subsection 6.1A above shall receive a monthly amount of Spouse's Pension equal to 75 percent of the amount determined in Article V for a Pension considering the Employee's Compensation and Service with the Employer to the date of his death.

2. *Post–Disability Retirement Death:* A surviving spouse who meets the eligibility requirements under Paragraph 2 of Subsection 6.1A above shall receive a monthly amount of Spouse's Pension equal to the monthly amount of the Disability Pension which the retired Employee was receiving or was entitled to receive under this System on the date of his death.[6]

The problem with application of subsection 6.1(B)(2) is that there is no "Paragraph 2 of Subsection 6.1A" setting forth and spelling out the eligibility requirements necessary for a surviving spouse to receive continuation of the benefit.

¶ 8 In their motion for summary judgment the Trustees set forth three possible scenarios as to the reference to the non-existent paragraph 2 of subsection 6.1(A), each of

concurrently herewith a fund to which contributions shall be made by the Employer and employees received by the City Treasurer, as Treasurer of the Retirement System." Sections 3.1 and 3.2 of Article III of the System plan discuss employer and employee contributions to fund the plan.

4. A letter from Defendant/Appellant, Margaret Chesser, a/k/a Margaret Lavern Chesser's counsel to Frederick requesting continuation of her deceased husband's monthly benefit is attached to the Trustees' trial court Petition for Declaratory Judgment filed on April 30, 2003. The letter is dated January 20, 2003.

5. We note that Appellant does not base her claim on or cite to any statute, state or federal, that is asserted to mandatorily require that a System plan like that adopted by the City of Frederick provide a surviving spouse pension in the situation involved here.

6. The remainder of Article VI provides as follows:

6.2 *Survivor's Pension:* The orphan child who has not attained his 18th birthday who survives the decedent eligible for pension rights shall receive a Survivor's Pension equal to 50% of the amount determined in Article V. The surviving orphan children are entitled to 75% of the amount determined in Article V, and three or more are entitled to the full amount.

6.3 *Surviving Spouse with Dependent Children:* A surviving spouse with two or more children who have not attained the age of 18 years shall be entitled to the full pension benefit.

Article V of the System plan sets out how to determine the amount of retirement benefits, including a disability pension (section 5.3). Appellant does not assert here that either section 6.2 or 6.3 are applicable.

which they basically argued would result in a conclusion that Appellant was not entitled to continuation of the disability benefit.

¶ 9 One, the Trustees in effect posited that the most logical interpretation was that the intent of the authors of the System plan was an intentional deletion of subsection 6.1(A)(2) from an earlier draft of the plan, but through oversight the authors neglected or forgot to also delete subsection 6.1(B)(2). In other words, that the System plan's authors only intended for surviving spouse benefits in the situation of an in-service death covered by subsections 6.1(A)(1) and 6.1(B)(1).

¶ 10 Two, that the reference to 6.1(A)(2) was a typographical error and was meant to refer to subsection 6.1(A)(1), i.e., to the in-service death eligibility requirements. The Trustees asserted that such an interpretation would be nonsensical because for a surviving spouse to be eligible for continuation of the decedent's benefit under 6.1(A)(1) the decedent must have been continuing in the active service of the City at the time of death and the employee must not have retired, i.e., requirements found in subsections 6.1(A)(1)(a) and (c), respectively; requirements that a surviving spouse like Appellant could **not** meet because Charles at the time of his death was **not** an active City employee, but **had** retired with a disability benefit under section 4.3 of the System plan.[7] The nonsensical nature of such an interpretation, according to the Trustees, is that it would be unreasonable to believe the plan's authors would create a category of surviving spouses of disability retirees only to then disqualify all of said spouses from receiving any benefits under the in-service death eligibility re-quirements spelled out in subsection 6.1(A)(1).[8]

¶ 11 Finally, the third scenario put forward by the Trustees in their summary judgment motion was that the System plan's authors intended to define eligibility requirements surviving spouses had to meet to receive continuation of the disability benefit their deceased spouse had been receiving, but through accident or oversight neglected to set forth the eligibility requirements in subsection 6.1(A)(2). The Trustees argued as to this scenario, in essence, that it would be improper for a court to set the eligibility requirements because it would place the court in the role of legislator as opposed to interpreter of the legislative will.

¶ 12 In her submission in response to the Trustees' summary judgment motion and in support of her own quest for summary judgment Appellant initially argued she met all the requirements of the System plan for continuation of the benefit, notwithstanding her recognition that no subsection 6.1(A)(2) existed to set forth the eligibility requirements. Although not directly stated by her, the argument appears to imply that she would meet any eligibility requirements that could have been intended or contemplated, e.g. she had not remarried, had been Charles' long-time wife and his widow at the time of death, and, in effect, she put forward in substance a fairness or equitable argument to continuation of the benefit.

¶ 13 Appellant also asserted several arguments purportedly supporting her claim. She posited that the System plan was to be interpreted both as a contract and as an

---

7. Section 4.3, contained in Article IV (Requirements for Retirement Benefits) of the System plan, provides in pertinent part:

 *4.3 Disability Retirement:* An Employee shall be eligible for a Disability Pension if his employment is terminated by reason of Disability, before his normal Retirement Date, provided he has then completed ten (10) or more years of credited Service. Payment of a Disability Pension shall commence as of the first day of the month coincidental with or next following the date of Retirement. The last payment shall be made as of the first day of the month in which the death of the retired Employee occurs, or if Disability ceases prior to his Normal Retirement Date, the first day of the month in which Disability ceases.

There is no subsection 4.2 contained in Article IV and we assume the reference to 4.3 regarding Disability Retirement is a typographical error, i.e., the correct numbering would have it as section 4.2.

8. The Trustees also asserted, in effect, that interpreting the reference to subsection 6.1(A)(2) as a typographical error really meant to refer to subsection 6.1(A)(1) would render the heading of that clause, Eligibility Requirements, In–Service Death, meaningless and confusing as it would also apply to surviving spouses of former employees that had retired from the City with a disability benefit and were no longer active City employees.

ordinance and that she was an intended third party beneficiary thereof. She also asserted that to interpret the ordinance in such a way that would disallow her claim would produce an absurd result, would somehow not give a rational construction to the System plan and apparently that a review of the whole ordinance showed an intent to provide benefits to a surviving spouse such as Appellant. Appellant also cited Article I of the System plan, which states its purpose. Article I of the System plan states:

> The purpose of this System is to provide retirement and incidental benefits for all regular full-time employees of the Employer including full time elected officials, as hereinafter defined, who complete a period of faithful service and become eligible hereunder. The benefits provided by this System will be paid from a fund established by the Employer and will be in addition to the benefits employees are entitled to receive under any other programs of the Employer and from the Federal Social Security Act.

> This System and the related Fund forming a part hereof are established and shall be maintained for the exclusive benefit of the eligible employees of the Employer and their beneficiaries.

She also took the view that although it was not possible to know why there was no subsection 6.1(A)(2), it was clear that surviving spouses of some description were intended to receive their deceased spouses disability pensions, obviously the view being based on the presence of subsection 6.1(B)(2) in the System plan.

¶ 14 Appellant also relied on certain statutory provisions contained in Title 15 of the Oklahoma statutes concerning interpretation of contracts that she posited, in effect, should be used to resolve in her favor any ambiguity or uncertainty concerning the reference in subsection 6.1(B)(2) to eligibility requirements meant to be contained in the non-existent subsection 6.1(A)(2).[9] Again she posited that the general purpose and intent of the System plan was to provide continuation of the disability benefits to someone in her circumstances and, in effect, that any ambiguity was caused by the Trustees (in essence, the City), was correctable only by them and any ambiguity should be interpreted most strongly against the Trustees.

¶ 15 In their reply and response to Appellant's response and motion for summary judgment the Trustees agreed that the System plan was both a contract and an ordinance, but asserted Appellant drew no distinction between interpreting the plan as either and that no substantive difference was offered by Appellant between such interpretations. The Trustees also reiterated their three possible scenarios for interpreting the reference to the non-existent paragraph 2 of subsection 6.1(A) and their view that each would result in a conclusion that Appellant was not entitled to continuation of the benefit. The Trustees, in effect, further argued that an overall view of the System plan did not evidence any intent to provide a continuation of a benefit to a surviving spouse in Appellant's situation. The Trustees also attempted to counter one or more of the positions put forward by Appellant.

¶ 16 After considering the parties' arguments and the record, including the evidentiary materials before it, the trial court gave summary judgment to the Trustees. In his order sustaining the Trustees' motion for summary judgment the trial court in pertinent part said the following:

9. In such regard Appellant cited and quoted 15 O.S.2001, §§ 166, 168, 169 and 170. These statutes provide as follows:
§ 166 Particular clauses of a contract are subordinate to its general intent.
§ 168 Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract.
§ 169 Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.

> § 170 In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party.

The Court finds that because the Employee Retirement System of Frederick, Oklahoma, makes no provision for the eligibility of a surviving spouse to receive a Post–Disability Pension, Defendant is not entitled to receive a pension based upon her deceased husband's disability payments. The Court has no explanation for why the system does not provide the eligibility requirements for a post-disability pension, but *does* provide for how to figure the amount of such a pension. The Court will not, however, provide and define the eligibility for post-disability benefits when the system document is silent.

(italics in original).

¶17 Appellant appealed and the COCA reversed and remanded with direction to the trial court to grant judgment for Appellant. The COCA, in an unpublished opinion, basically determined that the absence of eligibility requirements created an ambiguity in the System's terms which could be repaired by judicial application of the rules of statutory construction, the same rules being applicable to municipal ordinances. The COCA said in pertinent part:

The controversy between the parties arises from an ambiguity in a legislative enactment—an ordinance. "[W]hen the circumstances clearly indicate that [the legislative body] has overlooked something [then] rules of statutory construction [will be applied] in an effort to clarify and make sensible an act's purview." *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶15, 16 P.3d 1120, 1125–26 (footnote omitted). Construction of legislative enactments presents a question of law. *Id.* at ¶6, 16 P.3d at 1123 (footnote omitted).

The "principal object of statutory construction is to determine the legislative intent from an analysis of the whole act." *Maule v. Independent School District No. 9*, 1985 OK 110, ¶11, 714 P.2d 198, 203 (footnotes omitted). "Details are often omitted from legislative enactments which must be supplied by implication." *Id.* In ascertaining and giving effect to legislative will, inept or incorrect choice of words in a statute [or enactment] will not be construed and applied in a manner which would destroy the real and obvious purpose of the statute [or enactment]. *Id.*

The obvious purpose of Article VI of the pension trust is to provide benefits to surviving spouses whose employee-spouse (1) has died in-service or (2) has died after receiving a disability retirement benefit. The language of subsection paragraph 6.1.B directs that the surviving spouse of a retired employee with a disability pension "shall receive" a monthly benefit equal to the monthly benefit paid to the retired employee at the time of their death. The language in paragraph 6.1.B that purports to impose eligibility requirements on this surviving spouse benefit must be treated as surplusage to the extent that it refers to eligibility requirements that are completely omitted from the pension trust. In other words, there are no express eligibility requirements for this surviving spouse benefit.

We must further consider, however, whether there are implied eligibility requirements. Reading the pension trust as a whole reveals a general intent that all employees and beneficiaries who are similarly situated will be treated equally. As noted, there are only two surviving spouse benefits provided by the pension trust— one in the case of a retired employee and the other in the case of in-service death. The language of paragraph 6.1.A provides that a "surviving spouse" for purposes of the surviving spouse/in-service death benefit is one who "was not legally separated" from the employee at the time of death.

To treat the surviving spouse of a retired employee with a disability pension equally with the surviving spouse of an employee who dies in service, a surviving spouse for purposes of the disability benefit must likewise be one who "was not legally separated" from the retired employee at the time of his or her death. Thus, a surviving spouse, like Mrs. Chesser, who satisfies this single, implied eligibility requirement should be paid the survivor's pension benefit that the pension trust otherwise plainly directs they "shall receive."

(underlining in original).

¶18 The Trustees sought certiorari review, which we previously granted. We now hold

the COCA erred and the trial court correctly abstained from providing and defining eligibility requirements for continuation of the monthly disability benefit to a surviving spouse. In that our review of Ordinance No. 364, including the System plan contained in the record before us, does not plainly, obviously or clearly show, either expressly or impliedly, what the legislative intent is or was concerning eligibility requirements for a surviving spouse to be entitled to continuation of the disability benefit being received or which was entitled to be received by a deceased former Frederick employee at the time of his or her death, it would be improper for us to hold here that Appellant is entitled to a surviving spouse pension merely because she was not legally separated from her deceased husband (as the COCA held) or to create other eligibility requirements supposedly gleaned from a review and construction of the System plan as a whole. For us to do so would involve only guesswork or conjecture and would take us out of our limited role to interpret or construe legislative intent and would place us in the status of legislator or policy maker, a position we have no authority to undertake or play.

## ANALYSIS

¶ 19 The basic rules concerning statutory interpretation are well known and have been oft stated. *TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 20 stated:

> The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. If a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction a statute will be accorded the meaning expressed by the language used. However, where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. Further, the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute, nor will an inept or incorrect choice of words be applied or construed in a manner

to defeat the real or obvious purpose of a legislative enactment.

*Brewington,* 829 P.2d at 20. (citations omitted). It has also been stated:

> When a court is called on to interpret a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy. Also, the wisdom of choices made within the Legislature's lawmaking sphere are not our concern, because those choices—absent constitutional or other recognized infirmity—rightly lie within the legislative domain.

*Head v. McCracken,* 2004 OK 84, ¶ 13, 102 P.3d 670, 680. (citations omitted). "Only when the circumstances clearly indicate that in enacting the statute the legislature has overlooked something will this court apply rules of statutory construction **in an effort** to clarify and make sensible an act's purview." *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 15, 16 P.3d 1120, 1125–1126. (emphasis added; footnote omitted). However, "[t]o enable [a] court to insert in a statute omitted words or read it in different words from those found in it, **the intent thus to have it read must be plainly deducible from other parts of the statute.**" J.G. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 261, pg. 342 (1891)(emphasis added; footnote omitted).

¶ 20 The Supreme Court of North Carolina said the following in a case nearly one hundred twenty-five years ago:

> It is plainly the duty of the court to so construe a statute, ambiguous in its meaning, as to give effect to the legislative intent, **if this be practicable.** Its meaning in respect to what it has reference and the objects it embraces, as well as in other respects, is to be ascertained by appropriate means and *indicia,* such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia,* the preamble, the title, and other like means. But the maening (sic) must be ascertained from the statute itself, and the means and

signs to which, as appears upon its face, it has reference.

*State v. Partlow,* 91 N.C. 550, 552 (1884)(emphasis added; italics in original). *Partlow* went on to state:

The court must use every authorized means to ascertain and give it an intelligible meaning; **but if after such effort it is found to be impossible to solve the doubt and dispel the obscurity, if no judicial certainty can be settled upon as to the meaning, the court is not at liberty to supply, to make one. The court may not allow "conjectural interpretation to usurp the place of judicial exposition."** There must be a competent and efficient expression of the legislative will. In *Drake v. Drake, supra,*[15 N.C. 110 (1833)] Chief Justice RUFFIN said: "Whether a statute be a public or private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it be itself intelligible."

When the statute intends to refer to and embrace within its provisions one or more of a multitude of things of the same kind, or one or more persons of many of the same name, it must do so in some way or manner, in terms, or by reasonable implication (sic), or appropriate descriptive words, to designate what things or persons are intended by it. Else, how can the court or a ministerial officer decide what things or persons are meant? ... The statute must speak. The legislative expression of its purpose and will must prevail; **and if this does not appear with such a degree of certainty as that the court can learn what it is, the statute cannot operate.**

*Partlow,* 91 N.C. at 553. (emphasis added). Put simply, when called on to interpret a statute or ordinance a court's function given our tripartite system of government is to interpret or construe the applicable provision **in an effort** to expose the legislative will or intent and apply it to the applicable fact situation then extant, not to **itself** legislate or draft a law nor make policy decisions concerning the wisdom of what the legislative branch has enacted.

■ ¶ 21 Contrary to two of the Trustees' scenarios we find nothing in the language of Ordinance No. 364, including the System plan contained in the record, that would warrant an intelligible determination that the reference to the non-existent subsection 6.1(A)(2) was either a typographical error meant to refer to subsection 6.1(A)(1) instead, i.e., to the eligibility requirements regarding when a surviving spouse may receive benefits after the death of a City employee still active and not retired, or that the absence of subsection 6.1(A)(2) was an intentional deletion from an earlier draft of the System plan, but through oversight the authors neglected or forgot to also delete subsection 6.1(B)(2). These scenarios are based on mere guesswork and conjecture and we must deal with the plain words that are contained in subsection 6.1(B)(2). From our review of the above documents we find ourselves in agreement with Appellant who took the view that it is not possible to know why there was no subsection 6.1(A)(2), but that it is clear that surviving spouses of some description were intended to receive their deceased spouses disability pensions. In other words, because subsection 6.1(B)(2) is contained in the System plan we must assume the intent was that a surviving spouse of a former City of Frederick employee that was either receiving or was entitled to receive on the date of death a monthly disability pension was **under some circumstances** eligible to herself or himself receive a continuation of the monthly disability pension.

¶ 22 However, **those circumstances** are simply not discernible from the text of the documents before us and it would be mere guesswork and conjecture on our part to either add, modify or delete words from the text to either rule that no requirements are necessary except surviving spouse status or to specify additional eligibility requirements. Thus, it is not appropriate for us to either delete from subsection 6.1(B)(2) the words "who meets the eligibility requirements under Paragraph 2 of Subsection 6.1A above" or to add words specifying eligibility requirements when the municipal legislative intent

as to the nature of the eligibility requirements cannot be intelligibly or reasonably discerned. For us to either proclaim no requirements are necessary except surviving spouse status or to set additional requirements in such a situation would take us out of our proper role of interpreting or construing law and inappropriately involve us in making law and/or policy decision-making, something the judiciary has no right or power to do when called upon to review a legislative-type enactment. Only when the real or obvious purpose is plain and can be exposed by review of the text (or other properly reviewable indicia of legislative intent) may an inept or incorrect choice of words, or a legislative oversight, be corrected by addition, subtraction or modification. To rule otherwise takes a court out of the appropriate judicial role.

 ¶ 23 We are not unmindful that the general rule is that pension laws, being remedial or beneficial in nature, are to be liberally construed in favor of those to be benefitted. *See In re Benson,* 1936 OK 704, 62 P.2d 962 (Third Syllabus by the Court)("The purpose of laws for firemen's pensions is beneficial, and such statutes should be liberally construed in favor of those to be benefited[ ]"); *see also Board of Trustees of Firemen's Relief and Pension Fund of City of Muskogee v. Templeton,* 1939 OK 53, 86 P.2d 1000, 1003 (quoting *In re Benson* ) (*Templeton* case dealt with question of whether widow of deceased fireman pensioner was entitled to receive the pension).[10] We also recognize "the generally held view that public employees who have voluntarily

contributed to a retirement fund have a vested contractual right to receive benefits from the fund once their payment becomes due." *Baker v. Oklahoma Firefighters Pension and Retirement System,* 1986 OK 8, 718 P.2d 348, 351 (citing *Board of Trustees of the Police Pension and Retirement System of the City of Tulsa v. Kern,* 1961 OK 265, 366 P.2d 415)(footnote omitted). And finally we realize that generally speaking "a pension vests, or becomes absolute, at the time one becomes eligible to receive that pension." *Baker,* 718 P.2d at 351 (relying on *Ross v. Board of Trustees of Firemen's Relief and Pension Fund of Oklahoma City,* 1949 OK 132, 207 P.2d 254). However, notwithstanding our recognition of all of the above, we must be able to intelligently determine in the first instance from review of the ordinance, including the System plan, its title, preamble, etc., whether a surviving spouse such as Appellant was intended to be benefitted by, i.e., is eligible to receive, a continuation of a deceased former employee's disability pension benefit before we, through application of the rules concerning statutory or municipal ordinance construction, may adjust the language of the ordinance and plan in such a way to grant her a benefit. We cannot so determine.

¶ 24 When we read all the provisions before us we cannot say the obvious, clear or plain purpose was to allow someone in Appellant's situation to receive a continuation of her deceased husband's pension and we are left with serious doubt as to the legislative intent or will. This is particularly so given

10. The System plan at issue here essentially excludes from its ambit City of Frederick firemen and policemen. Section 2.1(i)(4), contained in Article II, Definitions and Construction of the System plan, provides:

> (i) *Employees:* Any person including full time elected officials.
> &#42; &#42; &#42;
> (4) who is not a member of the Employer's Fire Department covered by Firemen's Pension Fund and who is not a member of the Employer's Police Department covered by its Police Pension Retirement System or employees drawing pensions from either of these funds, except members of the volunteer Fire Department.

We also note that in the two copies of the System plan that are contained in the accelerated appeal record that has been filed in this matter it is obvious that one or more pages are missing from Article II. We have no way of knowing whether the page or pages were also missing in the copies of the System plan filed in the trial court or whether same were by some oversight (or other reason) excluded from the appeal record. We read nothing in the submissions of the parties in this case that relies on anything that might be contained on the missing page or pages to support their respective positions. We finally note that "[t]he appealing party must include in the record for appeal all materials necessary for corrective relief" and "bears total responsibility for" such inclusion. *Ray v. Ray,* 2006 OK 30, ¶ 12 and n. 16, 136 P.3d 634, 637. The appealing party here is, of course, Appellant, Mrs. Chesser.

the undisputed fact that the monthly disability pension benefit was received by decedent for eighteen (18) years and a beneficiary of a normal pensioner by the rather precise terms of section 4.1 of Article IV would **at most** receive a continuation of the pension for sixty (60) months. Section 4.1 states:

> *4.1 Normal Retirement:* An Employee shall be eligible for a Normal Pension if his employment is terminated on or after his 62nd birthday, provided he has then completed 30 or more years of Service. Payment of a Normal Pension shall commence as of the first day of the month coinciding with or next following Retirement, and the last payment shall be made as of the first day of the month in which the death of the retired Employee occurs; **provided however, that if the retired Employee has received less than 60 monthly payments at the time of his death, his Pension payments shall continue to his beneficiary or beneficiaries until a total of 60 monthly payments have been made to such Employee and such beneficiary or beneficiaries.** Each Employee shall retire on his 65th birthday (Normal Retirement Date) except that an Employee may continue working until his 70th birthday if requested by the Employer.

(emphasis added).

¶ 25 To us, the language we have emphasized from section 4.1 appears contrary and at odds with the COCA's view that a surviving spouse of a deceased **former** employee that has been receiving a disability pension for a number of years (here about 18 years) is somehow similarly situated to a surviving spouse of a decedent who at the time of death was still an active City employee who had not retired, but had ten (10) years of service and, thus, would at some point be eligible to receive a pension under the System plan's terms, **but received nothing** because they died prior to retiring from the City's employ. Instead although we need not definitively determine it here to properly resolve this case, it seems more reasonable to us that someone in Appellant's circumstances would be more similarly situated to the beneficiary under section 4.1 where the former/retired employee who was receiving a normal pension died prior to receiving 60 months of benefits and the beneficiary under section 4.1 is entitled to receive the former/retired employee's pension payments **only** until a total of 60 monthly payments have been made to the former employee and the beneficiary. Thus, contrary to Appellant's contention that it would be an absurd result to deny someone in her circumstances a surviving spouse benefit, a viable argument could be made, and some might assert, that it would be an absurdity to grant her one given the terms of section 4.1.[11]

¶ 26 The bottom line in this case is that because it is **not** obvious, clear or plain from a review of Ordinance No. 364, including the System plan, what the policy makers and

---

**11.** Immediately preceding Section 1 of Ordinance No. 364 is the title of the ordinance. It provides:

> AN ORDINANCE CREATING THE EMPLOYEE RETIREMENT SYSTEM OF FREDERICK, OKLAHOMA; PROVIDING THEREIN FOR RETIREMENT BENEFITS AND SURVIVOR BENEFITS FOR ELIGIBLE EMPLOYEES OF THE CITY OF FREDERICK, OKLAHOMA; THEIR SURVIVING SPOUSES AND BENEFICIARIES; MAKING PARTICIPATION BY CITY EMPLOYEES EMPLOYED AFTER THE EFFECTIVE DATE OF THE SYSTEM A MANDATORY CONDITION OF EMPLOYMENT; PROVIDING FOR EFFECTIVE DATE, AMENDMENT AND TERMINATION OF SUCH SYSTEM; AUTHORIZING AND RATIFYING EXECUTION OF THE FORMAL INSTRUMENTS CREATING SUCH SYSTEM; PROVIDING FOR CONTRIBUTIONS BY THE CITY, TO FUND THE BENEFITS, PAY OPERATING EXPENSES; PROVIDING FOR A FUND TO FINANCE THE SYSTEM; PROVIDING FOR ADMINISTRATION OF SUCH SYSTEM; PROVIDING PENALTIES FOR FRAUD AND DISHONEST CONDUCT; DECLARING THE FUNDS TO BE EXEMPT FROM LEGAL PROCESS; REPEALING ALL ORDINANCES OR PARTS OR (sic) ORDINANCES IN CONFLICT HEREWITH; PROVIDING A SEVERABILITY AND SAVING CLAUSE; AND DECLARING AN EMERGENCY[.]

Although the title, of course, mentions surviving spouses and survivor benefits, neither through such language in the title nor in any provision of the ordinance, including the language of the System plan before us in this matter, can it be determined with any degree of certainty what the drafters had in mind as to what eligibility requirements a surviving spouse of a decedent who was either receiving or was entitled to receive a disability pension benefit on the date of death would be required to meet to rightfully be entitled to continuation of the disability benefit.

drafters thereof had in mind as to whether a surviving spouse such as Appellant was or was not entitled to continuation of her deceased husband's disability pension, it is not proper for us to add, modify or delete terms from the legislative municipal scheme to award her such a pension or render her eligible therefor. To do so here would simply not be consistent with any intelligible actual expression of, or discernible implied, legislative intent or will, but would place us in the role of policy makers ourselves. It would be nothing other than a judicial usurpation of the legislative prerogative, for were we to take on such task we would be operating outside our limited role to interpret or construe what the lawmaking body has enacted and would have taken upon our own shoulders to decree what that body has itself failed to intelligibly promulgate, something given our tripartite governmental structure we have no authority or power to do.[12]

¶ 27 Accordingly, the Court of Civil Appeals' opinion is **VACATED** and the trial court judgment is **AFFIRMED.**

¶ 28 WINCHESTER, C.J., HARGRAVE, OPALA, TAYLOR, JJ., and LAVENDER, S.J., concur.

¶ 29 EDMONDSON, V.C.J., KAUGER, WATT and COLBERT, JJ., dissent.

COLBERT, J., dissenting with whom EDMONDSON, V.C.J., KAUGER, WATT, JJ. join:

¶ 1 Today this Court refuses to apply time-honored rules of statutory construction and contract interpretation to avoid an absurd and illogical conclusion. It simply makes no sense to acknowledge the City's express obligation to provide a "post-disability retirement death" pension and then ignore the eligibility requirements reasonably implied by related provisions of the same document. I would enforce the City's unambiguous promise to provide a spouse's pension to this widow by applying well-established rules of construction to infer the eligibility requirements.

¶ 2 The Employee Retirement System of Frederick, Oklahoma, was enacted as a municipal ordinance on September 27, 1966. As an ordinance, it is subject to the normal rules of statutory construction. *Tinker Inv. & Mortgage Corp. v. City of Midwest City,* 1994 OK 41, ¶ 13, 873 P.2d 1029, 1038. Because the System also forms a contract between the participating employees and the City, it is likewise subject to the normal rules of contract interpretation. *Woods v. City of Lawton,* 1992 OK 167, ¶ 7, 845 P.2d 880, 882; *Bd. of Trs. v. Kern,* 1961 OK 265, ¶ 7, 366 P.2d 415, 418. Appellant has the right to enforce its terms as a third-party beneficiary of the contract. Okla. Stat. tit. 15, § 29 (2001).

¶ 3 The System creates five different types of pension: (1) an employee's pension following normal retirement, section 4.1; (2) an employee's pension following disability retirement, section 4.3; (3) a deferred vested employee's pension, section 4.4; (4) a spouse's pension, section 6.1; and (5) a survivor's pension, section 6.2. A spouse's pension, described in article VI, is not a continuation of any of the three kinds of employee's pension, described in article IV. In general, an employee's pension ends on the first day of the month of the employee's death. A spouse's pension does not commence until after the employee's death.

¶ 4 Two circumstances lead to a spouse's pension: (1) the "in-service death" of an active employee, described in section 6.1.B.1; and (2) the "post-disability retirement death" of a disabled employee, described in section 6.1.B.2. The System unambiguously expresses the City's intent to create a spouse's pension for the surviving spouse of a deceased retired employee who was receiving a disability pension:

> *2. Post–Disability Retirement Death:* A surviving spouse who meets the eligibility requirements under Paragraph 2 of Subsection 6.1A shall receive a monthly amount of Spouse's Pension equal to the monthly amount of the Disability Pension which the retired Employee was receiving

---

**12.** Neither the statutes from Title 15 of the Oklahoma statutes set out at *supra* note 9 nor any other principle of contract interpretation or con- struction of which we are aware is appropriately applicable to alter the result we reach in this matter.

or was entitled to receive under this System on the date of his death.

The problem arises because there is no "Paragraph 2 of Subsection 6.1A" and, therefore, no eligibility requirements for a "post-disability retirement death" spouse's pension.

¶ 5 This Court has an obligation to fill statutory omissions when the failure to do so would result in absurdity or thwart the purpose of the law. *See Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276; *see also Fanning v. Brown*, 2004 OK 7, ¶ 13, 85 P.3d 841, 846; *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 15, 16 P.3d 1120, 1125–26; *Maule v. Indep. Sch. Dist. No. 9*, 1985 OK 110, ¶ 11, 714 P.2d 198, 203. "It is a quintessential function of any court of last resort to interpret ambiguous statutes and thereby resolve actual justiciable controversies before it. By resolving this controversy we are not legislating. Rather, we are simply performing our constitutional duty." *Cox*, 1996 OK 11, ¶ 7 n. 11, 911 P.2d at 277 n. 11.

¶ 6 This Court has accepted this responsibility in the past. In *Cox*, this Court drew on long-standing administrative rules, the Legislature's acquiescence in those rules, and the terms of similar statutes to supply essential but omitted details in a statute. *Id.* ¶¶ 22–24, 911 P.2d at 282. Similarly, in *Arrow Tool*, the Court "fashioned" a definition for "last order" based on practical considerations and the Legislature's intent. 2000 OK 86, ¶ 18, 16 P.3d at 1126. The Court reviewed the Nursing Home Care Act in *Fanning* to conclude that a nursing home's "owner" included not only the entity holding legal title but also "person[s] or entit[ies] ha[ving] responsibility for providing the relevant services to residents." 2004 OK 7, ¶ 13, 85 P.3d at 846 (interpreting Okla. Stat. tit. 63, § 1–1901 through 1–1951 (2001)).

¶ 7 *Maule* provides an excellent example of this Court's proper role of interpreting legislative enactments to reach a workable and coherent result. 1985 OK 110, ¶¶ 12–13, 714 P.2d at 203–04. In *Maule*, the Court weighed practical considerations to safeguard the Legislature's "overriding" intent and avoid a potentially unconstitutional application, even though it departed from the statute's express language to do so. *Id.* As *Maule* and the other cases demonstrate, this Court has not shirked its unique duty to interpret statutes to resolve actual controversies and further the law-making body's intent, even when the intended wording of missing or imprecise language is not readily apparent. *Cox*, 1996 OK 11, ¶ 7 n. 11, 911 P.2d at 277 n. 11.

¶ 8 The task here, to determine the terms of omitted eligibility requirements, is not nearly so complicated. The Court is aided by the long-standing rule that ambiguous pension statutes must be interpreted in favor of the beneficiaries. *In re Benson*, 1936 OK 704, ¶ 0, 62 P.2d 962, 962 (syl. no. 3 by the Court). In addition, courts construe a contract most strongly against the party creating the ambiguity. Okla. Stat. tit 15, § 170 (2001). The City created the ambiguity here.[1]

¶ 9 The City employed unambiguous language to create the spouse's pension: "A surviving spouse ... **shall** receive a monthly amount of Spouse's Pension equal to the monthly amount of the Disability Pension which the retired Employee was receiving." (Emphasis added.) The word "shall" is generally treated as mandatory—a nondiscretionary command—in both contracts and statutes. *Osprey L.L.C. v. Kelly–Moore Paint Co.*, 1999 OK 50, ¶ 14 n. 12, 984 P.2d 194, 199 n. 12; *U.S. v. Hobbs*, 1996 OK 77, ¶ 7 n. 16, 921 P.2d 338, 342 n. 16. The City's inadvertent omission of the eligibility re-

---

**1.** An ambiguous contract is interpreted most strongly against the party causing the ambiguity:

> [T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party.

Okla. Stat. tit. 15, § 170 (2001). The evidentiary presumption that any ambiguity was created by the party drafting the contract can, therefore, be reversed when the contract is between a public body and a private party. *Id.; State ex rel. West v. City of Sapulpa*, 1916 OK 861, ¶ 0, 160 P. 489, 489 (syl. no. 3 by the Court). Here, it is undisputed that the City drafted the language and created the uncertainty.

quirements does not make the mandatory language disappear. "Whether the parties intentionally left out language.. or unwittingly neglected to [include] it, this Court is nonetheless constrained by the agreement [because we] cannot expand [a] contract to include obligations or rights which the parties themselves did not delineate." *ENI Producing Props. Program L.P. v. Samson Inv. Co.* 1999 OK 21, ¶¶ 11 & 17, 977 P.2d 1086, 1088–1089.

¶ 10 Moreover, the terms of the missing paragraph are obvious under these circumstances. They can be based on the eligibility requirements for an "in-service death" spouse's pension in section 6.1.A.1: that, at the time of death, the employee has remained in active service lasting ten or more years and is not retired and that the employee and spouse are not legally separated. The "length-of-service" requirement is always met before the disability pension commences. The "not-retired" requirement is either irrelevant or is met indirectly when the employee is prevented from normal retirement by his or her disability. Only one requirement remains: lack of legal separation. Appellant has satisfied that requirement. Neither the majority nor the City has proffered any other requirement that might be imposed, despite the uncertainty they both profess to find.

¶ 11 The Court errs when it offers the time limit on normal retirement pension benefits to support its refusal to determine the missing requirements. Article IV describes three types of employee's pension. Section 4.1 describes a normal retirement pension, section 4.3 (there is no section 4.2) describes a disability retirement pension, and section 4.4 describes a deferred vested pension. Each independent section states the circumstances that will cause that form of pension to cease. Disability pensions and deferred vested pensions cease upon the employee's death. Only a normal retirement pension can continue beyond the employee's death, subject to a 60–month limit. Any benefits remaining after the normally retired employee's death within the 60–month limit would be paid to the employee's beneficiaries, not necessarily the surviving spouse. To the contrary, sec-

tion 6.1.A.1 provides that a spouse's pension continues until the spouse's death or remarriage. There is no basis, therefore, for construing **any** spouse's pension using the time limit applied to a normal retirement pension.

¶ 12 Even though **no** spouse's pension would ever be subject to the 60–month limit, the majority uses that limit to defend its refusal to consider the terms of the missing eligibility requirements for a spouse's pension. The majority's opinion first concludes, correctly, that the City's intent, unambiguously expressed in the System's text, is to treat the surviving spouse of a deceased employee on disability retirement like the surviving spouse of an active employee by granting each a spouse's pension. It then concludes, correctly, that the only ambiguity is created by the omission of the eligibility requirements. The Court strays when it asserts that it is "more reasonable" to treat the surviving spouse of a deceased employee on disability retirement like the surviving spouse of a deceased employee on normal retirement by applying the time limit on continued benefits paid to the beneficiaries of a normally retired employee. By going beyond the gap created by the missing language to question the City's underlying intent as unambiguously expressed in the System's text, the Court engages in the very "guesswork and conjecture" it claims it is trying to avoid. This argument "usurp[s] the legislative prerogative" in the truest sense.

¶ 13 When it is apparent that a legislative body has overlooked something when it enacted a law, this Court's proper role is to construe the law to achieve a workable result in light of the legislative body's intent. *Maule,* 1985 OK 110, ¶¶ 12–13, 714 P.2d at 203–04; *see also Arrow Tool,* 2000 OK 86, ¶ 15, 16 P.3d at 1125–26; *Cox,* 1996 OK 11, ¶ 7 n. 11, 911 P.2d at 277 n. 11. Similarly, interpreting the meaning of an ambiguous contract to give effect to the parties' intent is traditionally within this Court's purview. *See, e.g., First Enter. Bank v. Be–Graphic, Inc.,* 2006 OK CIV APP 141, ¶ 15, 149 P.3d 1064, 1068. That solemn authority, whether it be exercised to construe a statute or interpret a contract, is not diminished when we

must look beyond the express language (granting the pension in this instance) to the implied intent (eligibility requirements in this instance), so long as we can reasonably infer that intent.

¶ 14 Appellant is the surviving spouse of a man who died while receiving a disability pension from the City. The City executed a contract and enacted an ordinance that she **shall** receive a spouse's pension. The City's intent is unambiguous. The missing eligibility requirements can be reasonably inferred from related provisions. I would apply well-established precedent and direct the trial court to issue a judgment declaring that the Employee Retirement System of Frederick, Oklahoma, requires the City to pay a monthly spouse's pension to Appellant as the surviving, and not legally separated, spouse of a deceased retired employee who was receiving a disability pension at the time of his death.